HEARD NOVEMBER TERM, 1878.

CASE No. 710.

## JACOB LYONS v. BELLA HOLMES, JAMES D. TRADEWELL AND WILLIAM HOLMES.

1. When the witnesses and parties to a deed, signed by an illiterate grantor with her + mark, are dead, proof of the handwriting of the subscribing witnesses, together with other evidence confirmatory of the execution of the deed, are sufficient to require the case to be submitted to the jury upon the question of the execution of the deed, notwithstanding there was no evidence of grantor's signature. Proof of the signature by grantor in such cases is not indispensable.

2. Cases in our state reviewed and explained, and *Russell* v. *Tunno*, 11 *Rich.* 318, limited.

Before TOWNSEND, J., at Richland, January Term, 1879.

This was an action to recover a lot of land in the city of Columbia, formerly the property of Sarah Hane, a free woman of color. Plaintiff was devisee of Henry Lyons, and in support of his title offered in evidence a deed bearing date June 5th, 1855, conveying the lot to Henry Lyons in consideration of $500. The deed was signed "Sarah + Hane," and the names of I. D. Mordecai and C. S. Bedell were signed as witnesses. A probate by Mordecai and a certificate of record by the register of mesne conveyance for Richland county,* both bearing date June 5th, 1855, appeared upon the deed. Henry Lyons died in 1858, and by a codicil to his will, this lot was devised to plaintiff. Subsequently Sarah Hane died intestate, leaving Richard Holmes, her husband, at the date of the deed and since, her sole heir-at-law. Richard Holmes again married and afterwards died in 1870, and by his last will and testament devised this property, one moiety to his wife, Bella Holmes, and the other moiety to James D. Tradewell in trust for William Holmes—the defendants in this action. Defendants denied the execution of the deed.

---

*It does not appear in evidence, but it is a fact that the records of this office wer all burnt in February, 1865.—REPORTER.

The evidence showed the death of both parties to the deed, and also the death of the witnesses. The signatures of the witnesses were proven. No evidence was offered to prove the mark to be that of Sarah Hane, nor that she was seen to sign it. The other evidence in this case is fully stated in the opinion of the court.

The Circuit judge ruled that the deed was not sufficiently proven, and on defendant's motion ordered a non-suit.

Plaintiff appealed.

*Mr. W. A. Clark*, for appellant.

The sole question presented for the consideration of this court is, what proof is sufficient to authorize the submission to a jury of a deed executed with the grantor's + mark, when both of the subscribing witnesses are dead. Proof of the handwriting of the subscribing witnesses would seem to be all that could be required.

*First.* The best evidence which the nature of the case admits is to be produced. *Stark. on Ev.* 642*; 1 *Greenl. on Ev.*, § 82; 2 *McC.* 139*; 1 *Bail.* 543*.

*Second.* In England the rule would seem to be settled that if the subscribing witnesses be dead, or beyond the jurisdiction of the court, proof of their handwriting would be sufficient, and it would not be necessary to prove the handwriting of the grantor. *Stark. on Ev.* 519–521*, and cases cited; see review of English cases by Nelson, C. J., 19 *Wend.* 443.

*Third.* The courts of the State of New York have certainly recognized the rule as well established. 19 *Wend.* 437; 1 *Johns. Cas.* 230; 4 *Johns.* 461.

*Fourth.* In our state the rule would seem to be, that in such cases the handwriting of the grantor ought also to be proved, or " something to connect him with the instrument." 2 *McC.* 138; 11 *Rich.* 318.

These cases, however, establish no invariable rule. See remarks of Mr. Justice Gantt, in delivering the opinion of the court, in *Plunkett* v. *Bowman*.

And in the case of *Russell* v. *Tunno*, the testimony was too weak and uncertain. See remarks of Judge Withers.

*Fifth.* It is impracticable, after the lapse of so long a time, to prove the execution of a + mark; and herein arises one of those

circumstances which will dispense with the proof of the execution by the grantor, by testimony other than that of the subscribing witnesses.

Our courts have always recognized another rule where the instrument was executed by the + mark.  2 *N. & McC.* 374;  1 *Rice Dig.* 256.

And this rule is said by Judge Withers, in *Russell* v. *Tunno,* *p.* 32, to be recognized by our decisions.

And even when the execution of the instrument is in writing, but by a person not accustomed to write her name, or to transact business, so as to render her signature hardly susceptible of proof, our courts have held that the question should be submitted to the jury as presumptive evidence that such grantor had executed the deed.  2 *Bay* 157.

*Sixth.* The grantor was sufficiently connected with the instrument as to bring the case within the rule laid down in *Russell* v. *Tunno.*

*Mr. J. D. Pope,* for respondents.

1. The first proposition, that in the case of the death of the attesting witnesses it is not only necessary to prove their signatures, but that the signature of the grantor must also be proved, will hardly be called in question.  *Steph. Dig. Ev., Art. LXVI.,* *pp.* 121–122; *App.* 221.

In South Carolina, in such case, if there are two witnesses to the instrument, as in conveyances of real estate, then the signatures of *both* attesting witnesses must be proved as well as the signature of the grantor.  4 *McC.* 253; 1 *Brev.* 245.

In considering the cases in our books, the act of 1802 must not be overlooked as to the execution of bonds or notes, when other testimony is allowed, if the witness to the instrument is absent, unless the defendant shall swear that the signature to the bond or note is not his.  *Gen. Stat.* 514.

2. The second proposition; that when the deed is executed by making a cross (+) mark, and the witnesses are dead, the death of the witnesses being proved and the signatures proved, it is also necessary to prove the identity of the grantor as the real person who was present and made the mark, thus connecting him

personally with the mark so purporting to be made by him, is, we think, equally conclusive.

Why does the rule require that in case of death the signature of the grantor should be proved? It is to identify and connect the grantor with the deed. So, in the case of the marksman, the mere mark cannot do this. Any one may have made the mark. It has no character to distinguish it; and, therefore, the marksman must be identified in person as the one who actually made the mark as his signature. That certainly is the rule in England. 2 *Stark., IV.*, 239; 1 *B. &. Ald.* 19; 1 *Exch.* 511.

In South Carolina we have to the same point, 1 *McM.* 305; 2 *McC.* 138; 2 *Brev.* 200. And the last case upon the subject, where the English and South Carolina authorities are reviewed by Judge Withers. 11 *Rich.* 318.

3. In the case in hand, there is nothing going to show the identity of Sarah Hane with the deed in question.

(1.) If the probate before the magistrate could be evidence in the cause, (which it is not,) the witness, Mordecai, does not say that he saw Sarah Hane, *to him personally* known, sign, seal and deliver.

(2.) The paper signed by R. Holmes does. not identify Sarah Hane with this deed, nor does it identify the lot of land described in the deed, for Sarah Hane had several lots of land in Columbia.

(3.) Nor is the paper itself evidence, being an acknowledgment, not of Sarah Hane, nor by any one in the presence of Sarah Hane. This certainly could not affect her nor her property; nor does the testimony of R. D. Senn throw the least light upon the subject.

April 15th, 1879. The opinion of the court was delivered by

McIVER, A. J. The question in this case is whether the testimony offered by the plaintiff to prove the execution of a deed from Sarah Hane to the plaintiff's testator, Henry Lyons, was sufficient to allow the case to go to the jury. The Circuit judge, not regarding the testimony as sufficient, non-suited the plaintiff, and upon that error is assigned. The deed in question purports to have been signed by Sarah Hane with a + mark, in the presence of two subscribing witnesses, both of whom were dead at

the time of trial. It bears date June 5th, 1855, and appears to have been duly proved and recorded on the day of its date. The plaintiff proved the handwriting of the two subscribing witnesses and their death, and also proved by Levin, that as agent of the plaintiff, he paid the state and city taxes on the lot in controversy, which said deed purports to convey, from the year 1866, when plaintiff left the city, until the year 1869 or 1870, upon an understanding with Richard Holmes, who was the husband of Sarah Hane, that he would refund the amounts so paid, as he had agreed with the plaintiff to pay the taxes as long as he occupied the premises; and that he continued to pay the taxes until the defendants raised the question as to the ownership of the property. R. D. Senn also proved that the said Richard Holmes, under whom the defendants claim, executed in his presence a paper, of which the following is a copy:

"The sale of the lot, made by my wife Sarah, to the late Henry Lyons, deceased, has my consent, with the verbal conditions this day reduced to writing by J. C. Lyons.

(Signed)         "R.. HOLMES.

"Columbia, March 14th, 1860."

Witnessed by R. D. Senn, who testified that at the execution of this paper there was some talk between Lyons and Holmes about the occupancy by Holmes and wife of the lot of land now in controversy, but he could not say what were the precise terms of the verbal conditions which this paper shows were that day reduced to writing. It seems to us, that even under the most stringent rule which can be deduced from our cases, the testimony offered was amply sufficient to allow the question of the execution of the deed to go to the jury. The deed bore date more than twenty years before it was offered in evidence, and for that length of time it had been spread upon the public records of the country. All the parties to it were dead, including both of the subscribing witnesses. The supposed grantor was not only an illiterate woman, unaccustomed to write, but actually unable to write. All this, taken in connection with the testimony of Levin and Senn, afforded much stronger proof than that which has been held sufficient in some of our cases. In *Hopkins* v. *De Graffenried*, 2 *Bay* 187, the question, as in this case, was whether the

2 E

testimony offered to prove the execution of a deed was sufficient to go to the jury. The deed purported to have been executed by Thomas and Dorothy Moore, and the handwriting of the two subscribing witnesses, one of whom was dead, and the other out of the state, was duly proved, as was also the handwriting of Thomas Moore, but the handwriting of Dorothy was not proved. The court, while admitting the general rule of law "as laid down in 3 *Burr.* 1247, and *Doug.* 89, 90, (which, however, will be found not to lay down any such rule,) that it is necessary after you have proved the handwriting of the witnesses, then to prove the handwriting of the party to the bond or deed," said that this case formed "a strong and marked exception to the general rule," because the handwriting sought to be proved was that "of an old and infirm woman who did not sign her name more than once probably in fifty years, and it was next to an impossibility to find a man living who could prove her handwriting," and, therefore, they applied the rule that "where the best evidence a thing is capable of cannot be procured, then the next best ought to be admitted, not as conclusive but as presumptive evidence of the fact." The non-suit was, therefore, set aside in order that the testimony might be submitted to the jury. So in *Young* v. *Stockdale*, 2 *McC.* 531, a deed twenty-six years old, but whether recorded or not does not appear, was held to be sufficiently proved by proof of the handwriting of the grantor and *one* of the subscribing witnesses, all the parties being dead, and the other subscribing witness, a young man at the date of the deed, and his handwriting unformed, and, therefore, very difficult, if not impossible to be proved. In *Shiver* v. *Johnson*, 2 *Brev.* 397, it was held that where the maker of a note signs by his + mark, and the subscribing witness is out of the state, proof of the handwriting of the witness will be sufficient proof of the execution of the note, "from the necessity of the case." To the same effect is *Bussey* v. *Whittaker*, 2 *N. & McC.* 374; see also *Collins* v. *Lemastus & Lee*, 2 *Bail.* 141, for a case in which very slender proof was not only allowed to go to the jury, in proof of the execution of a bond signed by a marksman, but which, upon appeal, was held sufficient to sustain the verdict notwithstanding the fact that the evidence adduced by the defendant, after his

motion for a non-suit was overruled, contradicted that offered in behalf of the plaintiff.

There does appear to be some conflict in the decisions in this state as to what shall be sufficient evidence of the execution of an instrument to which there are subscribing witnesses, when the testimony of such witnesses cannot be obtained, but such conflict arises mainly, as we think, from the fact that certain *dicta* are thrown in some of the cases, which, in subsequent cases, are erroneously quoted as authority. The case of *Oliphant* v. *Taggart*, 1 *Bay* 255, decided in 1792, which is sometimes cited to show that, in this state, it is necessary to prove the handwriting of the obligor or grantor, as well as that of the subscribing witnesses, seems to be the first case upon the subject. The case, however, does not establish any such doctrine. The action was upon a bail bond, purporting to have been executed in the presence of one witness who had left the country prior to the trial. The plaintiff offered to prove the handwriting, not only of the witnesses, but also that of the obligor; but the counsel for the defendant objected, " under the circumstances of the case," and produced the affidavit of the subscribing witness, made prior to his departure for France, in which he swore positively that he had never seen the defendant sign the bond in question. Thereupon the court said that the evidence offered was legal and proper, but, in view of the fact stated in the affidavit submitted, it would be improper to let the case go to the jury then, and directed a commission to issue for the examination of the subscribing witness. The next case is that of *Hopkins* v. *De Graffenried*, decided in 1798, *supra*, which has already been commented on. *Hopkins* v. *Albertson*, 2 *Bay* 484, decided in 1803, simply holds that in order to prove a will as a link in a chain of title to real estate, where all three of the subscribing witnesses are dead, it is necessary to prove the handwriting of all three of the witnesses, but no question was raised, and nothing was said, as to the necessity of proving the handwriting of the testator also. *Myers* v. *Taylor*, 1 *Brev.* 245, decided in 1803, held that in an action on a bond it was necessary to prove the handwriting of the subscribing witnesses, in proof of the delivery of the bond, as well as that of the obligor. The report of the case does not

show that any question was raised as to the necessity of proving the handwriting of the obligor, for, that having been proved, the only question was whether it was not necessary to prove, also, the handwriting of the subscribing witnesses. In another report of this case, under the style of *Taylor* v. *Myers*, 2 *Bay* 506, Judge Bay appends an " N. B.," in which he says that the judges in a subsequent case, the name of which he does not give, upon a reconsideration of the point, held that the rule had been laid down too strictly, and that proof of the handwriting of the obligor would be sufficient without proof of the handwriting of the subscribing witnesses. The case referred to is probably that of *Madden* v. *Burris*, 1 *Brev.* 387, decided in 1804, in which the court held that the endorsement on a note, to which there was a subscribing witness, was sufficiently proved by testimony that such endorsements were genuine without producing the subscribing witness to the endorsement, or proving his handwriting. The next is *Gervais* v. *Baird*, 2 *Brev.* 37, decided in 1806, in which the action was on a note signed with a + mark, to which there was a subscribing witness, who was not produced, nor was any proof of his handwriting offered, but another witness proved that the defendant was in the habit of making her mark in the same manner in which it was made on the note, and said that he believed the mark was hers: *Held*, that the proof was sufficient upon the authority of *Madden* v. *Burris*, *supra*.

It is true, that Grimke, J., in delivering the opinion of the court, did say: " Proving the handwriting of the subscribing witness would not be sufficient." This remark is, however, clearly nothing more than an *obiter dictum*, and not called for by anything occurring in the case, as it does not appear that there was any offer or attempt to introduce such proof. *Paisley* v. *Snipes*, 2 *Brev.* 200, decided in 1807, was an action on a note purporting to have been signed by the defendant with a + mark, to which there was a subscribing witness, who, it was admitted, *was a resident of the state*. The court held that proof of the handwriting of such witness was not sufficient, upon the authority of *Gervais* v. *Baird*, in which, as we have just seen, the question did not arise. A better reason for the decision was, however, suggested, based upon the construction of the act of 1802,

which seemed to require, in the absence of the subscribing witness, proof of the *signature of the maker or obligor*, and, therefore, proof of the signature of the subscribing witness would not fulfill the requirements of the act.    The court does go on to say : . "If the maker of the note be a marksman, that circumstance will not avoid the necessity of proving his signature.    In many instances the mark of a man who cannot write can be known and distinguished, and, therefore, the case admits of the same proof that is necessary in cases where the maker can write.    But if the mark cannot be proved in this way, it must be proved by the subscribing witness to the note, or by some other person who was present and saw the mark made."    These remarks were plainly not necessary to the decision of the question arising in that case, for, as the subscribing witness was admitted to be a resident of the state, it was clearly insufficient to prove his handwriting.    They may, therefore, be regarded as mere *dicta ;* and this we are fully warranted in saying, for in the very next case upon this point, decided by the same court, in 1810, (*Shiver* v. *Johnston,* 2 *Brev.* 397,) as we have seen above, the contrary was held, the court saying : " The signature of a marksman may be proved by the peculiarity of his mark, [as in *Gervais* v. *Baird, supra,*] or his acknowledgment, if the witness whose name is subscribed to the note does not attend ; and proof of the handwriting of such witness is not sufficient, *if he be within the state,* [as in *Paisley* v. *Snipes, supra ;*] but if the subscribing witness *be not within the state,* proof of his handwriting is sufficient from the necessity of the case."    This doctrine has been affirmed in the still later case of *Busby* v. *Whittaker,* decided in 1820.    The next case is *Corneil* v. *Bickley,* 1 *McC.* 466, decided in 1821, of which there is no report, except that the point decided is stated to be that where the subscribing witnesses to a deed are out of the state, their handwriting must be proved, notwithstanding the fact that the handwriting of the grantor has been proved, and, therefore, throws no light upon the question under consideration, although it is sometimes cited to sustain the proposition that it is necessary to prove the handwriting of the obligor or grantor, as well as that of the subscribing witnesses.    Next comes the case of *Plunket* v. *Bowman,* 2 *McC.* 138, decided in 1822, which is much

relied upon by the respondents, and serves as a basis for the case of *Russell* v. *Tunno*, which will be hereinafter considered. In *Plunket* v. *Bowman*, the action was on a bond. The subscribing witness being dead, his handwriting was proved, and the question was, whether this was sufficient proof of the execution of the bond. It was held that it was not, as the next best evidence, where the subscribing witness is inaccessible, is proof of the handwriting of the obligor, with the additional proof of the handwriting of the subscribing witness. It will at once be seen that the rule thus laid down is manifestly inconsistent with the terms of the act of 1802, and the decisions construing that act; as it is certainly well established now that proof of the signature of the obligor, except where the defendant denies such signature under oath, is sufficient proof of the execution of the bond, and that "the additional proof of the handwriting of the subscribing witness" is wholly unnecessary. Hence it is entirely true, as Johnston, J., said, in the subsequent case of *Edgar* ads. *Brown*, 4 McC. 91, that the argument of the court (*Plunket* v. *Bowman*) proceeds entirely on the common law rule, and the provisions of the act of 1802 are wholly overlooked. This, however, is not so important to the immediate point we have under consideration, and is only adverted to for the purpose of showing that the case was not so carefully considered as to give it that weight to which it would otherwise be entitled. What is more to the point is that in the decision of the court in this case, not a single one of the decisions in this state upon the subject is referred to. Gantt, J., who delivered the opinion, rests his decision entirely upon the doctrine "that the best evidence is to be produced which the nature of the case admits," and argues that you have not got the best evidence until you have proof of the signature of the obligor, and hence he deduces the rule that to prove the execution of any instrument to which there is a subscribing witness it is necessary to prove not only the signature of such witness, but also that of the maker. He admits that Phillips, in his *Treatise on Evidence*, and he might have said Starkie, also, lays down the rule differently, but he undertakes to show that the two cases upon which Phillips relies, (*Prince* v. *Blackburn*, 2 *East* 250; *Adams* v. *Kers*, 1 *Bos. & Pul.* 360,) do not sustain his position. It is very

true that the former case can hardly be regarded as authority for the rule laid down by Phillips, because, although the only evidence offered in that case was proof of the handwriting of the subscribing witness, yet, as no question was raised as to the necessity of proving also the handwriting of the obligor, it cannot be considered as decisive of the point. But the case of *Adams* v. *Kers* is directly in point, and fully sustains the proposition laid down by Phillips and Starkie. For, in that case, the question was distinctly made. The only proof offered was that of the handwriting of one of the subscribing witnesses, and it was insisted that it was necessary to prove also the handwriting of the obligor. Butler, J., held that it was not, saying : " In this case, one of the attesting witnesses was dead, and the other was beyond the reach of the process of the court ; the best evidence, therefore, which could be obtained was given. The handwriting of the obligor need not be proved ; that of the attesting witness, when proved, is evidence of everything on the face of the paper, which imports to be sealed by the party."

Judge Gantt, however, concludes his opinion by saying, that when it is impossible to prove the handwriting of the obligor and of the subscribing witness, " I will not say but that the one or the other may be dispensed with, provided it is manifest that nothing is kept back, and that the best evidence which the nature of the case admits of has been produced." So that even this case can scarcely be regarded as establishing, as an absolute rule, that the signature of the obligor must, in all cases, be proved. In *Sims* v. *De Graffenried*, 4 *McC.* 253, decided in 1827, the only point that seems to have been raised was whether proof of the handwriting of *one* of the subscribing witnesses to a deed, who was dead, was sufficient ; the witness who proved this knowing nothing of the grantor or of the other subscribing witnesses, and it was held that it was not. It is also said : " The signature of the grantor and of the other subscribing witness, if he were dead or out of the state, should have been proved." The case is, however, so meagerly reported that it is impossible to say whether this is the language of the court or only that of the reporter, for the whole case seems to be nothing more than a mere abstract. But, even if it were the language of the court, it cannot be re-

garded as authority, as to the necessity for proving the handwriting of the grantor, for the only question seems to have been whether proof of the handwriting of *one* of the subscribing witnesses was sufficient. The question does not seem to have been *what* proof would be sufficient, but whether the *proof* offered was sufficient. The case of *Trammell* v. *Roberts*, 1 *McM.* 305, decided in 1841, really decides nothing on the point under consideration. The sole question raised in that case was, whether it was necessary to examine the subscribing witness to a note, who was a resident of the state, when the defendant filed with his plea an affidavit that the signature to the note was not his, after it had appeared in evidence that the defendant had admitted that his name had, under his authority, been signed to the note by another, and it was held that as the affidavit filed took the case out of the provisions of the act of 1802, under the stringent rule of the common law, the subscribing witness must be produced, if within the reach of the process of the court. Richardson, J., in delivering the opinion of the court, does use this language: "In such a case, and at common law, the subscribing witness must have testified in person, and in case he was beyond the jurisdiction of the court, then other witnesses, by proving his handwriting and the signatures of the makers of the note, would furnish legal, though secondary, evidence of the same facts," and for authority he refers to 1 *Stark.* 126–30. This, however, is nothing more than a *dictum;* and while it is sustained by the authorities cited, so far as the necessity for producing the subscribing witness, or proving his handwriting, if he is beyond the jurisdiction, is concerned, it is not only not sustained but directly contradicted by the author cited, so far as the necessity for proving the handwriting of the obligor is concerned. For, in 1 *Stark. on Ev.* 341, it is said: "It seems, however, to be now perfectly settled, for the reason already given, that evidence of the signature of one of the attesting witnesses alone is sufficient, as in the case of *Adams* v. *Kers*, where it was proved that one witness was dead and that the other was in Jamaica, and proof of the handwriting of the deceased was held sufficient, without proof of the handwriting of the other witness or the obligor." The next case is that of *State* v. *Chaney*, 9 *Rich.* 438, decided in 1856, in which it was held

that a bill of sale of personal property could not be received in evidence upon mere proof of the handwriting of the subscribing witness.    But as there was no testimony as to whether such witness was or was not within reach of the process of the court, the case is of no authority upon the point in question.    Then comes the case of *Russell* v. *Tunno,* 11 *Rich.* 303, decided in 1858, upon which the respondents in this case chiefly rely.    In this case one of the questions was as to the execution of an assignment, purporting to have been executed in New Orleans, by Russell, in the presence of two witnesses, La Roque and Monaghan.    To prove the assignment three witnesses were examined by commission in New Orleans, La Roque being one of them.    He testified that he did not know any of the parties to the suit, one of whom, it will be observed, was the supposed assignor; that he remembered nothing whatever about the execution of the deed; signed his name as a witness; believed the signature of Monaghan to be genuine, as he was acquainted with his handwriting; did not know what was done with the deed of assignment; believed the notarial certificate attached to it to be in the handwriting of Monaghan, and the signature and seal thereto to be genuine; knew nothing whatever about Russell.    The other two witnesses proved the signature of Monaghan, the notary, and that he had left New Orleans clandestinely and gone to parts unknown.    Upon this testimony the Circuit judge allowed the question as to the execution of the assignment to go to the jury, and, on appeal, the court held that " some evidence was necessary in addition to what was adduced on the Circuit to show the due execution of the assignment by Russell, as proof of his handwriting or something else, to connect him with the instrument before the paper could go to the jury."    This decision was by a divided court—three to two—the sixth judge being absent.    In delivering the opinion of the court, Withers, J., said : " This question, also, is attended by contrariety of decision, for there is not uniformity of opinion in English or American cases, perhaps, we may say, not even among our own. We have, however, a rule prescribed in *Plunket* v. *Bowman,* 2 *McC.* 138, which we think it proper to follow so far forth as this, that where a subscribing witness to an instrument is dead, or beyond the jurisdiction, something more than merely proof of

his handwriting is required before the defendant shall be held connected with the paper as maker." He then proceeds to comment on *Edgar* ads. *Brown,* 4 *McC.* 91, in which it was held that proof of the signature of the obligor to a bond, executed in Delaware, without any proof as to the signature of the subscribing witnesses, who were not within the jurisdiction, was sufficient proof of the execution of the bond, saying that it was in conflict with *Meyers* v. *Taylor,* 1 *Brev.* 245, but overlooks the fact that the last-named case had been overruled by *Madden* v. *Burris, supra,* and *Gervais* v. *Baird, supra.* He also cited *Paisley* v. *Snipes,* 2 *Brev.* 200, to show that proof of the signature of the maker was necessary, ignoring the important fact that, in *Paisley* v. *Snipes,* the subscribing witness was admitted *to be a resident of the state,* and that precisely the contrary had been held in the subsequent case of *Shiver* v. *Johnson, supra,* where the subscribing witness *was not a resident of the state.* He also relies upon *Trammel* v. *Roberts,* 1 *McM.* 305, quoting the language of Richardson, J., hereinbefore quoted, which, as we have seen, was not only a mere *dictum,* but unsustained by the authority cited to support it, so far as the necessity for proving the handwriting of the obligor, in addition to that of the subscribing witness, is concerned. The learned judge then proceeds to show that the testimony of the subscribing witness who was examined, instead of strengthening rather weakened the evidence of the execution of the assignment, for he knew nothing whatever of Russell, and nothing as to the delivery of the deed or what disposition was made of it. "He shook if he did not rebut such presumption as might have arisen from proof of his handwriting merely, where that might have been accepted." The English authorities relied upon in this case, are *Parkins* v. *Hawkshaw,* 2 *Stark.* (*N. P.*) 239; 3 *E. C. L. R.* 332; *Nelson* v. *Whittall,* 1 *B. & Ald.* 19; *Whitlock* v. *Musgrove,* 1 *Exch.* 511. But in *Parkins* v. *Hawkshaw* the precise question which we are considering did not arise, as there was no attempt to prove the bond by proof of the handwriting of the subscribing witness. On the contrary, such witness was himself examined, and he testified that he saw the bond executed by a person who was introduced as Hawkshaw, and though he gave some description of his person

he could not identify him with the defendant in the case.   In
*Nelson* v. *Whittall,* Bailey, J., expressed his dissatisfaction with
the rule laid down by Phillips, that proof of the handwriting of
the attesting witness is sufficient, where such witness is beyond
the jurisdiction, and thought that such testimony alone was not
sufficient to connect the defendant with the note, but that some-
thing more should be required.  In *Whitlock* v. *Musgrove,* which
was an action on a note purporting to be signed by a marksman,
it was held that, while it was not necessary to prove the signa-
ture of the maker, it was necessary, in the absence of such proof,
to prove "something else to connect the party sued with the
instrument."   The authority of these cases, however, must cer-
tainly be regarded as very much shaken by the more recent cases
of *Sewell* v. *Evans* and *Roden* v. *Ryde,* 4 *A. & E. (N. S.)* 626.
See, especially, the remarks of Lord Denman, C. J., and Patter-
son, J., in the latter case.

The last case among the decisions in this state which we have
been able to find upon this subject is that of *Jones* v. *Jones,* 12
*Rich.* 116, decided in 1859, in which it was held that where the
attesting witness to a note, signed with a $+$ mark, was a free
person of color, proof of his handwriting is not sufficient proof
of the execution of the note, for the very obvious reason, as the
court says, that "the witness could not have been called, not by
reason of any intermediate disability supervening, but originally
by reason of *status; a fortiori,* the proof of his handwriting
merely was more objectionable."   It is very true that the court,
per Withers, J., does proceed to add these words:  "But if he
had been competent to attest and to prove the deed, and had died,
such evidence as was offered would be insufficient.   Other evi-
dence of the defendant's signature would have been necessary
still," for which *Russell* v. *Tunno, supra,* is cited as authority.
But these words were not only clearly unnecessary to the deter-
mination of the question raised in the case, but the authority
cited does not go to the extent of holding that "other evidence
of the defendant's signature would have been necessary still," in
such a case, for it is conceded in *Russell* v. *Tunno* that in case of
a paper purporting to be executed with a mark, proof of the

handwriting of the subscribing witness would, under our decisions, be sufficient.

In New York the question seems to be settled, and there proof of the handwriting of the subscribing witness, when such witness is beyond the jurisdiction, seems to be sufficient without proof of the handwriting of the obligor or grantor. *Mott* v. *Dougherty*, 1 *Johns. Cas.* 230; *Shuby* v. *Champlin*, 4 *Johns.* 461; *Davis* v. *Kimball*, 19 *Wend.* 437.

From this review of the cases it will be seen that it cannot be said that there is any well-established rule upon the subject of universal or even general application; and while, perhaps, it would have been better to have adhered to the rule laid down by Phillips and Starkie as simple, definite and of easy application, well sustained, as it is, by high authority, we do not feel called upon to overrule the case of *Russell* v. *Tunno*, but are not willing to extend the rule there laid down beyond what that case imperatively demands. Conceding, however, the full force of that rule, we think that the testimony adduced in this case was amply sufficient to require that the question of the execution of the deed from Sarah Hane to Henry Lyons should have been submitted to the jury. For that rule does not require that the signature of the obligor or grantor shall be proved in addition to proof of the handwriting of the subscribing witnesses, but only that something more than mere proof of the handwriting of the subscribing witnesses is necessary; and in this case, as we have seen, there was something more than such proof. In addition to this it is conceded, as we have just said, in *Russell* v. *Tunno*, that in case of paper purporting to be signed with a + mark the rule is different under our decisions.

The judgment of the Circuit Court is set aside and a new trial ordered.

New trial granted.

WILLARD, C. J., and HASKELL, A. J., concurred.