(Opinion published 52 N. W. Rep. 386.)

---

## State of Minnesota *vs.* William D. Grimes.

Submitted on briefs May 12, 1892. Decided June 2, 1892.

**Special Venire for Grand Jurors.**

The defendant having challenged the panel of the grand jury for alleged defects in its organization, the challenge was sustained, and the grand jury thereupon discharged. The court then caused a grand jury to be summoned by a special *venire*, and the defendant challenged the panel thus returned, upon the ground that the court had no authority to cause a grand jury to be summoned in that manner. *Held*, that the court had such authority under the statute.

**Indictment—Statement under a Videlicet.**

Even though, in an indictment, matters which are *essential*, so that they must be positively alleged and proved, are stated under a *videlicet*, yet the averment is to be taken as positive and certain. The use of the *videlicet* in such a case is to particularize or explain what, without it, would have been general or obscure.

**Arson—Indictment for.**

Where, by the felonious burning of an uninhabited building, (a barn,) a dwelling house is "endangered," the communicating of the fire from the barn to the dwelling house does not raise the crime to the grade of arson in the first degree, unless, when the dwelling house took fire, there was a human being therein.

**Indictment—Variance.**

> It being alleged that the property (a barn) was owned by and in the possession of A., the proof was that it was owned by A., but that her husband had possession of it. *Held* no material variance, under the statute.

**Evidence.**

> Proof that the dwelling house actually took fire from the burning barn was competent to establish the material fact that it was "endangered."

Appeal by defendant, William Daniel Grimes, from a judgment of the District Court of Cottonwood County, *P. E. Brown*, J., entered July 1, 1891, adjudging him guilty of arson in the second degree, and that he be imprisoned therefor ten years at Stillwater at hard labor.

*Lorin Cray*, for appellant.

*Moses E. Clapp*, Atty. Genl., and *Wm. C. Benbow*, County Atty., for respondent.

DICKINSON, J.   For a general term of the district court held in Cottonwood county in June, 1891, fifteen persons only (instead of twenty-three) were drawn and summoned to serve as grand jurors.   They all appeared at the opening of the court, and the court then by a special *venire* caused eight other persons to be summoned to serve as grand jurors.   All the persons so summoned (twenty-three) were then sworn as a grand jury.   The defendant, who, upon a preliminary examination before a magistrate, had been required to appear at that term of the court to answer to any indictment which might be found against him, then interposed a challenge to the panel of the grand jury, because (among other reasons) the requisite number of persons had not been drawn and summoned, as required by law.   This challenge was allowed by the court, and the grand jury, as thus organized, was discharged.   The court then directed that a special *venire* be issued for the summoning of twenty-three competent persons to serve as a grand jury for that term.   That number of qualified persons having been returned, they were sworn as a grand jury. The defendant challenged the panel as thus organized.   His challenge was disallowed, and an indictment was found against him, upon which he was tried and convicted.

1. It may be taken as conceded that the grand jury as it was first organized was not legally constituted. The defendant's challenge to the panel amounts to such a concession, and we may assume at the outset that the court was justified in discharging the grand jury. The defendant cannot complain that his objection to the grand jury was sustained, and the jury discharged. It does not concern him, in any legal sense, that this body might have legally acted in respect to accusations against other persons if no objection by challenge or otherwise were interposed by or in behalf of such other persons. This defendant, whose challenge was allowed, had no right to have that grand jury retained to act in other cases in which he was in no way interested. Indeed, it may have been that there were no matters for the consideration of a grand jury at that term of court other than the charge resting against this defendant.

The defendant's contention is that the court had no authority to summon a grand jury by a special *venire,* and that the investigation of the charge against him should have been postponed until the next term of the court. But assuming, as may be done for the reasons above stated, that the grand jury as first organized was not legally constituted, and that it was therefore properly discharged upon the defendant's challenge, it is considered that the court had authority to summon another grand jury, as was done. This was expressly authorized by 1878 G. S. ch. 64, § 17, in which, after providing for a special *venire* in case of a "deficiency of jurors," it is enacted: "If at any term of such court there is an entire absence of jurors of the regular panel, whether from an omission to draw or summon such jurors, or because of a challenge to the panel, or from any other cause, the court may in like manner order a special *venire* to issue to the sheriff of the county commanding him to summon from the county at large," etc. As is apparent from the preceding section (15) this provision embraces both grand and petit juries. *State* v. *Froiseth,* 16 Minn. 313, 317, (Gil. 277.) In *State* v. *McCartey,* 17 Minn. 76, 81, (Gil. 54,) the action of the court in procuring an entire petit jury after the discharge of the regular panel was sustained. There is no legal ground for a distinction in respect to grand juries.

2. The sufficiency of the first count in the indictment is called in

question.   The offense sought to be charged in this count was that of arson in the second degree, which, by the terms of the Penal Code, § 375, subd. 3, is committed when a person " willfully burns, or sets on fire, in the nighttime, a building not inhabited, but adjoining or within the curtilage of an inhabited building, in which there is at the time a human being, so that the inhabited building is endangered, even though it is not in fact injured by the burning." The indictment alleges the burning of " a building not inhabited, to wit, a barn, but within the curtilage of an inhabited building, to wit, a dwelling house, in which," etc.   The objection relied upon in respect to the indictment is founded on the use of the *videlicet*, which it is said makes uncertain the matters thus alleged.   The objection is founded on the erroneous theory that what is alleged under a *videlicet* is never to be construed as a precise, positive averment.   This may be true when what is thus pleaded is not essential in its nature, and so need not be proved as alleged.   *State* v. *Heck*, 23 Minn. 549. But where the matter alleged under a *videlicet* is essential, entering into the substantial description of the offense, the averment is regarded as positive and direct, and is traversable.   It will then be treated as particularizing that which was before general, or as explaining that which was before obscure.   Hob. 172; 1 Chit. Pl. 317, 318; Note to *Dakin's Case*, 2 Saund. 291; 1 Archb. Crim. Pr. & Pl. (Waterman's Notes,) p. 279 ; *Hastings* v. *Lovering*, 2 Pick. 214, 222, 223; *Gleason* v. *McVickar*, 7 Cow. 42.   And see *Buck* v. *Lewis*, 9 Minn. 314, (Gil. 298.)   Hence we need not consider whether all that was pleaded under the *videlicet* was essential and necessary to be averred and proved with certainty.   As to essential matters the allegations are to be regarded as positive, precise, and traversable, although laid under the *videlicet*, and as to matters so nonessential that the pleader would not be concluded even by a positive averment the *videlicet* would not prejudice, though it be taken as indicating that the pleader does not undertake to prove the fact precisely as alleged.   It may be added that the proof in this case was in accordance with facts alleged.

3. The question is presented whether this count is not uncertain in respect to the offense charged because of its charging arson in the

second degree,—the burning of the barn, endangering the inhabited building; and also arson in the first degree,—the burning of the inhabited dwelling house. But while the indictment is not in commendable form it is reasonably apparent that this count was not intended to allege more than the burning of the barn and the endangering thereby of the inhabited building; and it fails to state the offense of arson in the first degree, because it does not show that when the fire was communicated from the barn to the dwelling house there was any person within the latter building. Penal Code, § 378; *Reg.* v. *Fletcher*, 2 Car. & K. 215.

4. It was alleged that the property was owned by and in the possession of Nancy Grimes. The proof was that she was the owner of the property in fee; that the dwelling house was kept as a hotel by her husband, she living there with him; and that he used the barn as a hotel barn and stable in connection with the hotel. If it be conceded, as the defendant claims, that this offense is in its nature related to the possession, rather than to the ownership, of the property, and that in legal contemplation the injury was to the husband, who had actual possession of the barn, still we think that the allegation and the proof justified the conviction. By force of 1878 G. S. ch. 108, §§ 8, 25, the error in the allegation or variance in the proof, if, indeed, there was any error or variance, was immaterial. The former section provides that "when the offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation, as to the person injured or intended to be injured, is not material." And the latter section declares that "in the prosecution of any offense committed upon, or in relation to, or in any way affecting, real estate, * * * it shall be sufficient and shall not be deemed a variance, if it is proved on trial that at the time when the offense was committed either the actual or constructive possession, or the general or special property, in whole or in part, of such real estate * * * was in the person or community alleged in the indictment or other accusation to be the owner thereof."

For the same reason, it appearing conclusively and without contradiction that Mrs. Grimes owned the property, the evidence, which

may have tended to show that she was also in the actual possession of it, cannot have prejudiced the defendant, and it is unnecessary to decide some questions raised as to the admissibility of such evidence. As to the motion to strike out all the testimony of the witness Huntington as to the ownership of the property because not responsive to the questions asked, it is enough to say that it does not appear to have been irresponsive, nor that it was not drawn out by the defendant's counsel in his cross-examination.

. 5. The fact that the inhabited building—the hotel—caught fire from the barn which the defendant is charged with having fired, was competent evidence to prove the material ingredient in the offense charged, viz., that the inhabited building was endangered.

6. The substance of the defendant's eleventh request was embraced in the charge as given to the jury.

Judgment affirmed.