STATE v. W. B. BOURNE.[1]

June 13, 1902.

Nos. 13,037—(25).

**Larceny—Pleading and Proof.**

Where, in an indictment for larceny for obtaining money or property through false pretenses, it is charged that the intent is to defraud a particular person, it is not a variance if the proofs tend to show that some other person or corporation than the one specified in such criminal pleading was defrauded.

**False Pretenses.**

Where the false pretenses were fraudulent writings of apparent value sold to a third party, and it appears that the purchaser innocently thereafter made use of the same to secure benefits, the law contemplates an intent to defraud the person to whom the instruments were sold, or whoever parts with money in reliance thereon.

**Same—Parol Evidence.**

Upon a prosecution for obtaining money of an incorporated bank upon false pretenses it is competent, as between the bank and the person who received the money, to show by parol who were the officers of the bank in the transaction, without requiring proof of their legal appointment to the positions which such officers assumed to hold.

**Criminal False Pretense.**

A criminal false pretense may be accomplished wholly by means of writings in connection with such conduct by the person making use of the same as to reasonably induce confidence in their genuineness, though in fact false and fictitious; and it is not necessarily essential that a strict legal liability is indicated thereby, if the reasonable tendency is to impose upon the person defrauded.

[1] Reported in 90 N. W. 1108.

Appeal by defendant from an order of the district court for Ramsey county, Bunn, J., denying a motion for a new trial. Affirmed.

*A. E. Bowe* and *Lawler & Arnold,* for appellant.

*W. B. Douglas,* Attorney General, *T. R. Kane,* County Attorney, and *O. H. O'Neill,* Assistant County Attorney, for the State.

LOVELY, J.

Defendant was convicted of larceny in the first degree for obtaining through false pretenses a written order of the value of upwards of $7,000. He was convicted and sentenced to the state prison for ten years. A motion for new trial was overruled, from which order he appeals.

Upon the trial, evidence of a very convincing character supported the following conclusions: Defendant was a deputy auditor of Ramsey county, authorized to execute orders on the county treasurer for the refundment of moneys paid upon invalid tax certificates under the provisions of G. S. 1894, § 1697. By this law the holder of an invalid tax certificate not in possession of the land can apply to the county board for refundment. In such cases where the refundment is approved by the board and the state auditor, the owner of the certificate, upon surrender of the same or assignment to the state, is entitled to have from the county auditor an order on the county treasurer for the amount of the certificate and interest. Many such orders were executed by defendant as deputy auditor in the course of his official duties, and were delivered to the persons entitled thereto, who would then present them to the treasurer, who would either pay the same, or, if there were no funds for payment, would indorse that fact on the order, when the holder would be entitled to interest until paid. After such presentment and nonpayment, these orders were, in many instances, transferred to investors, to hold until redeemed for the accruing interest.

The evidence further tended to show that defendant manufactured seven of these refunding orders, in which payees were respectively named. They were each for different amounts, but aggregated the sum of $7,352.49. It also appeared from the evi-

86 M.—28

dence that there was a complete simulation of everything stated therein. They were indorsed by placing the name of the ostensible payee upon the back of each, and were then taken in a bunch by defendant to the county treasurer for payment. There being no funds at the time for that purpose, the treasurer made the usual indorsement of that fact and returned them to defendant to deliver to the supposed owners. Defendant then took them to the State Savings Bank of St. Paul, where they were offered and sold by him as genuine. He received the face value thereof through an order on the First National Bank of St. Paul. The county treasurer called in the warrants later, and the State Savings Bank innocently presented them for payment, and received the amount due, so that the refunding orders thus sold by defendant, though worthless in fact, brought to the savings bank at the time what it would have rightfully obtained had they been genuine.

Upon this fact the serious contention for defendant is made,—that the allegation in the indictment that it was the intent to defraud the State Savings Bank cannot be sustained, since there had actually been paid into its hands the full amount it expected to obtain. It is not contended that defendant did not intend to defraud some one, but that his intent to defraud is to be tested by the actual result of his criminal acts, since he could only premeditate the natural consequence that followed; and, when the treasurer of Ramsey county innocently paid to the innocent purchaser of these forged orders their apparent face value, it conclusively established an intent to defraud the county, rather than the bank, which it is urged is a fatal variance between the indictment and the proofs.

It is not easy, upon the application of the rules of the common law or of common sense, to discover any legal force to this claim. The use of the false instruments, with knowledge that they were false, to obtain money from a person, who parted with it, would, in ordinary contemplation of reason and the conditions of human responsibility in the usual affairs of life, indicate a purpose to defraud that person. We need not here pass upon any question that may arise between the State Savings Bank and Ramsey county. Such a consideration would concede to the contention

of defendant a more serious importance than we are inclined to give it. Defendant's counsel on the argument was not willing to commit himself to the view that the money paid on these worthless forgeries could not be recovered from the bank by the county, and we do not consider it necessary to anticipate any question that may arise between those parties; but it cannot be disputed that when these orders were transferred to the bank they were calculated to deceive, and that the bank presumably purchased them in reliance upon their genuine character. Had the bank known, upon their offer for sale, that they were forgeries, there can be no doubt that its conduct would have been wrongful and criminal. That it was not wrongful and criminal is because it did not know their character, and its innocence in this respect will protect it in the same way that the transfer of a forged note by a person who had honestly purchased it in the regular course of business would be excused.

But we are unable to give to the defendant the benefit of the good faith of the bank or of the county treasurer. The bank, when it purchased these orders, had a right to know the true state of affairs. That such knowledge was withheld before the transfer to the county was merely an unlawful incident of the crime, which defendant cannot avail himself of. He had no right to assume that the knowledge to which the bank was entitled would be suppressed or remain unknown an instant, for the law will not permit him to base any benefit whatever upon delay of exposure. But the best answer to this claim is in an appropriate provision of the statute. G. S. 1894, § 7245, which has been in force ever since the state existed, provides as follows:

"When the offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation, as to the person injured or intended to be injured is not material."

Where a criminal act affects a peculiar right in property—as the specific interest of a mortgagee of chattels as against the mortgagor—which is guarded by a penal statute, it may be necessary both to allege and prove an intent to injure a particular party.

Such was the case of State v. Ruhnke, 27 Minn. 309, 7 N. W. 264. But where the criminal act applies to all alike, it was not, "even before the passage of our statute, necessary to prove the injury, or the intent to injure or defraud, exactly as alleged in the indictment, for, if the crime were committed with a malicious or felonious intent, it mattered very little who was the particular person injured, or intended to be injured." State v. Boylson, 3 Minn. 325 (438); State v. Grimes, 50 Minn. 123, 52 N. W. 275; State v. Crawford, 66 Iowa, 318, 23 N. W. 684.

Several assignments of error challenge the evidence introduced at the trial wherein witnesses testified over objection that certain persons dealing with defendant were acting as officers of the bank. It is claimed that legal appointments of such officers should have been first received. The articles of incorporation of the savings bank were introduced. Its corporate entity was established, and the actual relations of the apparent officers of the bank to the corporation were in no wise material, necessary, or involved in the commission of the crime. The fact that such officers filled places in the bank in the usual course of its business was sufficient. Whether they were legally appointed or not could not in any way affect or concern the defendant or affect his unlawful acts.

It is further urged that the refunding orders which were issued, each bearing thereon the apparent indorsement of the payee, were not in legal form transferred to the bank, for the reason that such orders were nonnegotiable, and required an assignment above the name of the indorsers, which they did not have, to make the transfer good. But this controversy is not between such indorsers and the bank, and it is of no advantage to the defendant that the transfers were not authorized; hence it is not necessary to consider whether a third party selling to the bank a valid refundment order indorsed in blank would be required to write a valid assignment above the indorsement, for it seems very clear that a party presenting such an order for sale having the name of the payee indorsed thereon would thus convey to the intended purchaser an assurance that he had a right to dispose of it, and we are unable to see how the defendant can take the benefit of a technical defect in their sale, if it existed,—which we do not decide. Back of all this

is the fact that there was and could be no legal transfer because the orders were fabricated, but according to their simulated form and tenor they contained representations, in connection with the offer for sale to the bank, that might naturally impose upon one to whom they were offered.

Other assignments of error have been considered, but are not of sufficient importance to require particular notice. We have given to this and the preceding case against the same defendant a more careful and extended consideration than we believe the legal merits of either require. The zeal and earnestness of able counsel in the presentation of these appeals have somewhat justified our course in this respect; we are also willing to secure the exemplary effect of the quick discovery of a supposed cunning scheme to defraud the public by one of its trusted servants, whereby, in the short period of six months, the treasury of Ramsey county was looted of a large sum of money, which was easily detected, and the punishment of the guilty party promptly secured. Both cases were ably and temperately presented on behalf of the state. The instructions of the trial court to the jury were clear and impartial, and a careful review of the evidence satisfies us with the result. We do not see how it was possible for the jury to have arrived at any other conclusion than that the defendant was guilty of the grossest violations of law. While the conviction of a guilty person ought not to be sustained if it invades any substantial right which the law seeks to secure to all, yet we must say that the contentions urged for defendant on these reviews are exceedingly technical, and of no importance to an innocent person accused of crime. The easy detection and swift conviction of defendant is commendable in the officers having his detection and prosecution in charge, and we trust will be of salutary effect to the public service.

Order affirmed.