(74 South. 846)

ADDINGTON v. STATE.          (6 Div. 16.)

(Court of Appeals of Alabama.   Sept. 7, 1916.
On Application for Rehearing,
Oct. 19, 1916.)

1. FALSE PRETENSES ⟿13—MATERIALITY—RIGHT TO RELY.

The false pretense by which a signature to a mortgage is obtained must be of a material fact, calculated to deceive, and on which the party to whom it is made has the right to rely.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 17.]

**2. INDICTMENT AND INFORMATION ☞71—ALLEGATION OF PRETENSE.**

In the absence of a statute dispensing with the necessity of stating the false pretenses relied on, the indictment must allege the pretenses in such terms as enable the court to determine whether they are within the statute, and with such certainty as to show that it constitutes an indictable offense.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 144, 174, 193, 194.]

**3. FALSE PRETENSES ☞34 — INDICTMENT—SUFFICIENCY.**

An indictment setting forth a false pretense, and alleging that by means of such false pretense defendant obtained the signature to a mortgage, sufficiently alleges that the false statement was made as a fact, was material, and that it was rightfully relied on by the other party.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 46.]

**4. INDICTMENT AND INFORMATION ☞110(15)—STATUTORY FORM.**

An indictment for false pretenses, following the form prescribed by Code 1907, § 7161, form 59, is sufficient.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 291–294.]

**5. INDICTMENT AND INFORMATION ☞147—SEVERAL PRETENSES.**

An indictment is not subject to demurrer, because several matters are alleged as false pretenses, some of which are such pretenses within the statutes, and others are not; but the averments of pretenses not within the statute will be treated as surplusage, unless they are descriptive averments.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 490–494.]

**6. CRIMINAL LAW ☞442—EVIDENCE — PRELIMINARY PROOF—SIGNATURE BY MARK.**

Under Code 1907, §§ 4004–4006, authorizing proof of the execution of a written instrument by the maker without producing or accounting for the absence of the subscribing witness, a mortgagor, who could not read or write, can testify to the execution of the mortgage, if as a witness she was able to identify her mark.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1027.]

**7. MORTGAGES ☞58 — EXECUTION — SIGNATURE BY MARK—EFFECT OF ACKNOWLEDGMENT.**

Under Code 1907, § 3357, providing that acknowledgment operates as a compliance with the requirement of the preceding section for witnesses, a mortgage signed by mark, regularly acknowledged and recorded, is valid, without the attestation of a subscribing witness.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 153, 154.]

**8. ACKNOWLEDGMENT ☞56 — COLLATERAL ATTACK—INTEREST OF NOTARY.**

A mortgage is not subject to collateral attack, in a prosecution for obtaining the signature thereto by false pretense, on the ground that the notary who took the acknowledgment was personally interested in the mortgage.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 301, 302, 315.]

**9. FALSE PRETENSES ☞38—VARIANCE—SEVERAL PRETENSES.**

Where an indictment for obtaining money under false pretenses alleges several separate pretenses, proof of any one of them is sufficient to support a conviction.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. §§ 50–53.]

**10. FALSE PRETENSES ☞49(4)—EVIDENCE—STATEMENT.**

In a prosecution for obtaining a signature to a mortgage by false pretenses, evidence *held* to warrant the jury in finding that defendant sufficiently stated that he was a lawyer, not that that was the conclusion the prosecuting witness drew from other statements, so as to justify a conviction.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 62.]

**11. CRIMINAL LAW ☞553—APPEAL—REVIEW —CREDIBILITY OF WITNESS.**

The credibility of a witness, testifying in a criminal prosecution, is a question for the jury, not for the appellate court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1252.]

**12. CRIMINAL LAW ☞844(1)—APPEAL—EXCEPTIONS TO CHARGE—CHARGE PARTIALLY CORRECT.**

An exception to a portion of the charge in a criminal prosecution is of no avail, as showing reversible error, unless every proposition stated in that portion is erroneous.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2025.]

**13. CRIMINAL LAW ☞844(1)—APPEAL—EXCEPTION TO CHARGE—GROUND OF EXCEPTION.**

An exception to that part of the charge beginning with certain words, to the effect that it was not necessary to establish each false pretense charged, is not an exception to a small portion of the part referred to, beginning with the middle of the paragraph and ending in the middle of a sentence, which was claimed on appeal to be erroneous, as assuming that one of the several false pretenses alleged to have been made was a misrepresentation as to a fact.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2025.]

**14. CRIMINAL LAW ☞820—CHARGE—GRAMMATICAL CONSTRUCTION.**

The test of severe grammatical criticism is not the proper rule of construction to apply to the general charge of the court in a criminal prosecution.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1988.]

**15. CRIMINAL LAW ☞820 — CHARGE — CONSTRUCTION—ORDINARY MEANING.**

Hypercriticism should not be indulged in, in construing the charge of the court in a criminal prosecution, where the charge was expressed in plain language that is susceptible of ordinary understanding.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1988.]

**16. CRIMINAL LAW ☞844(2)—EXCEPTIONS—CHARGE—GROUND OF OBJECTION.**

Where accused particularized the ground of his exception to a portion of the court's charge, the appellate court is not authorized to go beyond the stated ground.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2025.]

**17. CRIMINAL LAW ☞767—CHARGE—INVADING PROVINCE OF JURY—CONSTRUCTION AS A WHOLE.**

Where the court in its charge several times stated that the misrepresentations relied on to constitute the false pretenses must have been of a material fact, a sentence in another part of the charge to the effect that it was not necessary to prove all the misrepresentations to sustain a conviction, but that if it was shown that defendant made any of them, enumerating them, he might be convicted, was not erroneous, as invading the province of the jury, because it did not again include a requirement that the representation be one of fact, since it

is impossible to state all the law in one sentence of the charge, and the charge must therefore be construed as a whole.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1795.]

Brown, J., dissenting in part.

Appeal from Criminal Court, Jefferson County; William E. Fort, Judge.

Jacob L. Addington was convicted of securing the signature to a mortgage by false pretenses, and he appeals. Affirmed, and petition for rehearing denied.

The second count of the indictment sufficiently appears, but in the indictment the mortgage alleged to have been obtained under false pretenses is set out in full. The oral charge of the court and the exceptions thereto are as follows:

Now, gentlemen, you have listened to this case from the beginning to the end, and have heard the evidence on both sides, and have listened patiently to the arguments of counsel for the state and for the defendant. You recognize that you are not here for the purpose of doing a favor to either side, neither to the state nor the defendant. You are not here for the purpose of doing anything in this cause, except to establish what is the truth, from the evidence in this case, and under the law which the court will give you in its charge. Twelve men have been selected, as jurors, because of their impartiality, their everyday experience in affairs of life and intelligence, in order that they may determine the issues in this case justly, intelligently, and without fear or favor. You, gentlemen, being those selected, become officers sworn to establish the truth as you see the truth to be, from the evidence in the case. Now you, gentlemen, are the sole judges and the exclusive judges of the evidence, and you are entitled to apply to the evidence in the case as you have heard it from the witness stand, your everyday common sense and experience, your intelligence and your judgment, what you have gathered from dealing with men and affairs, in the ordinary affairs of life. You likewise may consider, not only the spoken words of the witnesses, but may look behind those spoken words for any interest which the witness may have in the case, and any bias or prejudice, or anything which might sway the witness aside from the path of truth. The motive, then, of each witness in the case, may be looked to by you in determining what weight you will give to the testimony of each of the witnesses in the case. You have the right, of course, to reject any portion of any witness' testimony which you believe to be untrue; the general rule of law being to accept the true and reject the false, because, remember, gentlemen, that all through the case truth is what you are trying to arrive at, from all the testimony, from all of the witnesses in the case, so that in this court justice may be founded upon truth. You have the right to observe the manner of each witness while testifying on the stand, his facial expression, in order to determine from that, and from the evidence or testimony, and from his own words, what the truth is in the case. Now the presiding judge, gentlemen, is required to give the jury a statement, as clearly as possible, of the law of the case. The presiding judge is the judge of the law. He is here to interpret that law to you, so that you may understandingly apply the law to the evidence. I will give you, gentlemen, as briefly as I can, and as clearly, my understanding and interpretation of the law of Alabama as applied to the charge made against the defendant by the indictment in this case, and as all other phases thereof covering the rights of the defendant and the charge made against him.

The first count of this indictment, gentlemen, I charge you, you cannot convict upon, because of its failure to set forth an instrument which on its face would be capable of forgery. There is a defect in the instrument as set out; that is, in the acknowledgment. The instrument does not appear in that count to be acknowledged, as it is in the second count of the indictment; the second count of the indictment, therefore, will be the only count or charge made before you against the defendant at bar. Now that count, gentlemen, does not charge forgery, but it charges an offense under section 6921 of the Code, under the general heading of fraud. That section reads as follows: "Any person who, by any false pretense or token, and with intent to injure or defraud, obtains fom another his signature to any written instrument, the false making of which is forgery, must, on conviction, be punished as if he had forged the instrument." It is under the general statutes known as obtaining money or other goods by false pretenses, but charges not the obtaining of money or goods, but the obtaining of the signature of another to any written instrument, the false making of which is forgery. Now you will observe, gentlemen, from the very reading of the Code, that there are certain essential elements—that is, certain essential things—that must exist before the offense can be made out. The indictment charges an offense under that section, and it is necessary to prove beyond reasonable doubt, in the first place, that there was a false pretense made by the accused to the party alleged to have been injured—a false pretense; that is, a statement of facts, either an existing fact or a past fact, which is false or untrue. That is the first essential element of the offense which we have to consider. Was there a false statement made by the accused, as charged in the second count of the indictment? In other words, if the accused, as stated in the second count falsely pretends to Rachel Woodruff, "with the intent to injure or defraud, that he, the said Jacob L. Addington was a lawyer"? Now that is one of the charges of false pretense. Is that a fact or not? Did he falsely pretend that he was a lawyer or not, as charged, to Rachel Woodruff? In the first place, you have to determine, did he make that statement, as charged, that he was a lawyer? If so, was it false or true? Now you have heard the evidence on that subject, both that on behalf of the state and on behalf of the defendant, and it is for you to say, as judges of the evidence, what the truth is, where you find the evidence in conflict. If you can reconcile such conflict, so as to make the witnesses speak the truth, it will be your duty to do so, in fairness to the witnesses; but if you find any two witnesses are in irreconcilable conflict, then of course it is for you, and you alone, to decide what the truth is, rejecting what you believe to be untrue, and accepting what you believe to be true.

The second element of this offense charged in the second count of the indictment is that there must have been an *intent* on the part of the defendant to injure or defraud, either to injure the party to whom the false statement was alleged to have been made or defraud her. Now you, gentlemen, have heard the evidence in this case, and from that evidence as introduced you must determine whether or not there was an intent, on the part of the party accused of the alleged false statement, to injure or defraud. Now how does a jury arrive at a conclusion as to what a man's intent was? The only way here you can decide what a man's intent was, intent being what was in the heart of a man, is from all the circumstances, all the surrounding circumstances, from the evidence in the case, and then weigh those circumstances, if sufficient, and draw your reasonable conclusion whether or not there was an intent to defraud;

whether or not it is true, applying to it your own judgment, your own experience, and your common sense. Now it is not necessary that all the alleged false pretenses should be proven as charged. In other words, it would be sufficient to sustain the false pretense alleged in this second count of the indictment if you believed, beyond a reasonable doubt, that the defendant, with the intent to injure or defraud, made any one of the alleged false statements set out therein.

For example, if it was proven beyond a reasonable doubt that he, with the intent to injure or defraud—that the defendant said he was a lawyer, that would be sufficient, without proving furthermore that he made the representation that "he could plead the case of James M. Addison, charged with vagrancy in court." You would not have to prove all that was alleged, but any one statement set forth, provided it was a material statement, and provided that the party to whom same was made relied upon it, and was induced to sign the alleged instrument by relying on such statement. If the state proves, beyond a reasonable doubt, that any one of these separate alleged false statements, either that he said he was a lawyer, or that he could plead the case of James M. Addison, charged with vagrancy, in court, or that he, Jacob L. Addington, was an attorney at the Birmingham bar and was authorized to defend cases in Birmingham, Ala.; in other words, if the evidence proved any one of those three alleged false statements, it would be sufficient to make out a charge of false pretense, provided you believed beyond a reasonable doubt that the defendant had at the time an intent to injure or defraud, and furthermore that Mrs. Rachel Woodruff signed the instrument described on account of that false statement, and was—and that that was the controlling inducement or controlling cause that moved her to sign it, and provided, furthermore, that that occurred in this county, and within three years next preceding the finding of the indictment. Of course, it must have occurred within that period in order to be actionable, because, if it did not happen within three years before the indictment was found, it would be barred by the statute of limitations, and it must have been in this county. So those are facts you have to find from the evidence in this case, after considering all the evidence on each side.

That the third essential element of obtaining a signature by false pretense is that the signature was obtained by means of such false pretense; and that is for you to say, gentlemen, after you have heard the evidence and the law, just what you think to be true, with reference to each of the allegations of the indictment. Of course, you have to believe beyond a reasonable doubt that there was such an instrument signed, as is set forth in the second count of the indictment, that Mrs. Rachel Woodruff signed that, and under the charge of the court that it was such an instrument as would be capable of forgery. Now the court charges you that instrument set out in this second count of the indictment is a mortgage, and being acknowledged, and signed and acknowledged and witnessed, that this is such an instrument as would be capable of forgery. Let me read you, in order that you may not misunderstand the technical features of the law, from the case of Woodbury v. State of Alabama, an Alabama decision, which is a leading authority on this question. It referred, of course, to obtaining goods or money under false pretenses, but the same principle applies to that, as it would to obtaining the signature by false pretenses. "A false pretense, to be indictable, must be calculated to deceive and defraud. As of an actionable misrepresentation, it must be of a material fact, on which the party to whom it is made has a right to rely; not the mere expression of an opinion, and not of facts open to his present observation, and

in reference to which, if he observed, he could obtain correct knowledge. Whether the prosecutor could have avoided imposition from the false pretense, if he had exercised ordinary discretion and prudence to detect its falsity, is not a material inquiry. As a general rule, if the pretense is not of itself absurd or irrational, or if he had not, at the very time it was made and acted on, the means at hand of detecting its falsehood, if he was really imposed on, his want of prudence is not a defense. * * * The false pretense must not only be, however, of a material fact, but it must have been, not the sole, exclusive, or decisive cause, but a controlling inducement with the prosecutor for the transfer of his money or property. Other considerations may mingle with the false pretense, having an influence upon the mind and conduct of the prosecutor; yet if, in the absence of a false pretense, he would not have parted with his property, the offense is complete. * * * But if without the false pretense he would have parted with his property—if that is not an operative, moving cause for the transfer—if he did not rely and act upon it, there may be falsehood, but there is not crime." Woodbury v. State, 69 Ala. 245, 44 Am. Rep. 515.

Now, gentlemen, the law in reference to the question of presumption of innocence and reasonable doubt is this: That whenever a man is charged with any crime or other offense against the law, whether it is a felony or misdemeanor, he is presumed innocent until his guilt is established by the evidence, beyond a reasonable doubt. That presumption of innocence goes with him until the evidence establishes his guilt beyond a reasonable doubt. When the evidence does establish his guilt beyond a reasonable doubt, then the presumption of innocence ceases. But until that time that presumption goes with him as a matter of evidence to which he is entitled, as a matter of evidence and of policy. Now, you being men of intelligence and judgment, accustomed to exercise reason in the ordinary affairs of life, when you have heard this testimony and considered it all on both sides, fairly and impartially, seeking the truth, if you have left in your minds an actual substantial doubt that the defendant is guilty as charged, then you should give him the benefit of that doubt and acquit him. On the contrary, if you are convinced of his guilt from the evidence in the case, so that you have no such doubt left in your mind that he is guilty as charged, then you should convict him, provided the offense occurred in this county, and within the next three years preceding the finding of the indictment. The law says you must be satisfied in a criminal case to a moral certainty. A moral certainty does not mean, of course, an absolute certainty, or a mathematical certainty. If the law laid down that standard, it would be impossible to arrive at the truth with that standard, because you have to rely on human testimony, with all of its imperfections and frailties, and there could not be absolute truth with absolute certainty, and the law says not then with absolute certainty, but to a moral certainty. That is such a certainty of guilt from the evidence that you have no reasonable doubt of his guilt left in your mind. Now, if you are convinced of the defendant's guilt in this case to that degree of certainty where you have no reasonable doubt left in your mind after considering all of the evidence, then you are convinced to a moral certainty; otherwise not.

The showings that have been offered in evidence, gentlemen, mean that where one side has absent witnesses, and presents to the opposing side a statement on oath as to what that witness or those witnesses would testify, if present, the other side is required to admit that, if those witnesses were present and testifying, they would testify as set out in that showing. Of course, the party admitting the showing does not

admit—that is, is not required to admit—that the statements set out in the showings are true; in other words, that the statements made by the witnesses would be true, if made by them, but are required to admit that that witness or witnesses—those witnesses who are thus absent—would, if present, testify as set forth in the showing; and as to what weight shall be given to any statement given by a witness, as set forth in a showing, is a question for you to decide, weighing the statement in the light of other evidence, and in the light of your experience and judgment, giving to each portion of it such weight as you think it ought to receive, you being the judges of the evidence, and the showing being evidence in the case, and entitled to your consideration as such.

A verdict, gentlemen, means a true saying of 12 impartial men, who have agreed upon the truth as they see it, from the evidence. It takes 12 men to convict in any criminal case, and it takes 12 men to acquit—an agreement of 12 men. Therefore, in order for a verdict of acquittal, an agreement of 12 men is necessary, and it takes for a conviction an agreement of 12 men. Now the law requires you to take this evidence, and go over it, and discuss it, and, if you can do so, then reach a verdict which expresses the opinion of each individual juror, the truth of the case. If you cannot, well, of course, then there cannot be any verdict of any kind rendered. If you should find the defendant guilty as charged in the second count of the indictment, the form of the verdict, should be, "We, the jury, find the defendant guilty as charged in the second count of the indictment." The court fixes the punishment in cases of the offense charged against the defendant, in case you find him guilty. If you find the defendant not guilty, the form of your verdict should be, "We, the jury, find the defendant not guilty."

To remove any doubt on that proposition the counsel objects, or rather excepts, to my statement that the state is required to admit a showing. That statement means this: It is required to admit that, or have the case continued, one thing or the other. They are required to admit, in order to go to trial, the showing of the other side as to absent witnesses, or a continuance shall be permitted—results. It is for the court to decide whether a continuance shall be permitted, provided the court has acted upon a proper evidence before it and in the light of its judgment.

Defendant's Counsel: We desire to except to that part of the charge beginning with the words "It is not necessary," to the effect it is not essential to establish each representation by the evidence, and that the establishment of any one would be sufficient. Your honor understands my point?

The Court: Yes; I will say in that regard—I think I covered that in the charge, but I will say that the statement that the court made to that effect, to the effect that it is only necessary to establish one of the representations; that is, coupled with the statement that each of those statements must have been a material statement, and one upon which the party relied, and which induced the party to act.

Defendant's Counsel: We except on that point.

The Court: Yes; I understand that is your point, but we do not agree on the law on that proposition.

The Court: I give you, gentlemen, a number of charges in writing requested by defendant's counsel in this case; it being the law that wherever either side requests of the trial judge special charges in writing covering any phase of the law in the case, if those charges state the law correctly with reference to the matters to which they refer, then the presiding judge must give them, and read them to the jury as a part of the law of the case. They are to be considered in connection with the general or oral charge, which I have already delivered, as a part of the law in the case, good law in reference to the matters to which they refer.

That part of the oral charge of the court, excepted to as above stated, was as follows:

Now, it is not necessary that all the alleged false pretenses should be proven as charged. In other words, it would be sufficient to sustain * * * this second count of the indictment if you believed, beyond a reasonable doubt, that the defendant, with intent to injure or defraud, made any one of the alleged false statements set out therein.

For example, if it was proven beyond a reasonable doubt that he, with the intent to injure or defraud—that the defendant said he was a lawyer, that would be sufficient, without proving furthermore that he made the representation that "he could plead the case of James M. Addison, charged with vagrancy in court." You would not have to prove all that was alleged, but any one statement set forth, provided it was a material statement, and provided the party to whom it was made relied upon it, and was induced to sign the alleged instrument relying upon such statement. If the state proves, beyond a reasonable doubt, that any one of these separate alleged false statements, either that he said he was a lawyer, or that he could plead the case of James M. Addison, charged with vagrancy, in court, or that he, Jacob L. Addington, was an attorney at the Birmingham bar, and was authorized to defend cases in Birmingham, Ala.; in other words, if the evidence proved any one of those three alleged false statements, it would be sufficient to make out a charge of false pretenses, provided you believed beyond a reasonable doubt that the defendant had at the time an intent to injure or defraud, and furthermore that Mrs. Rachel Woodruff signed the instrument described on account of that false statement, and was—and that that was the controlling inducement or controlling motive that caused her to sign it, and provided, furthermore, that that occurred in this county, and within three years preceding the finding of the indictment.

Gibson & Davis, Gaston & Drennen, and H. K. White, all of Birmingham, for appellant. W. L. Martin, Atty. Gen., Harwell G. Davis, Asst. Atty. Gen., and Hugo L. Black, Sol., of Birmingham, for the State.

BROWN, J. The defendant was convicted on the second count of the indictment. The first question presented is as to the sufficiency of this count to authorize a judgment on the verdict of the jury. The contention of the appellant is that, although the indictment follows the form prescribed by the statute, inasmuch as this form does not contain an averment as to the materiality of the false pretenses, but leaves this to the pleader, enough of the transaction must be stated to show that the false statement or representation was material to the transaction in hand and to identify the occasion.

[1, 2] That the false pretense, to come within the statute, must be of a material fact, calculated to deceive, and on which the party to whom it is made has the right to rely, does not admit of question. Woodbury v. State, 69 Ala. 242, 44 Am. Rep. 515; 11 R. C. L. 831, § 9. And in the absence of

a statute dispensing with the necessity of stating the false pretenses relied on, the indictment must allege them in such terms as enable the court to determine whether or not the act is within the statute, and with such certainty as to show that it constitutes an indictable offense. 11 R. C. L. 858, § 41; Barton v. People, 25 Am. St. Rep. 384, note. Otherwise stated, the general rule is that an indictment must aver every fact necessary to an affirmation of guilt, and the rule is not satisfied as long as any fact essential to guilt is left to implication or inference. Jenkins v. State, 97 Ala. 66, 12 South. 110; Emmonds v. State, 87 Ala. 12, 6 South. 54; Adams v. State, 13 Ala. App. 330, 69 South. 357.

[3, 4] The form of the indictment here is that "Jacob L. Addington did falsely pretend to Rachel Woodruff, with intent to injure or defraud, that he, the said Jacob L. Addington, was a lawyer; that he could plead the case of James M. Addison, charged with vagrancy in court; that he, the said Jacob L. Addington, was a practicing attorney at the Birmingham bar, and was authorized to defend cases in the courts of Jefferson county, Ala.; *and by means of such false pretense* obtained from the said Rachel Woodruff her signature to a certain written instrument in substance as follows," etc. We hold that the averment, *"and by means of such false pretense obtained,"* etc., is tantamount to an averment that the alleged false statement was made as of fact, was material to the transaction in hand, and that the party alleged to have been defrauded had a right to rely thereon, that she relied thereon, and was deceived thereby (Franklin v. State, 52 Ala. 414; Hicks v. State, 86 Ala. 30, 5 South. 425; Todd v. State, 13 Ala. App. 301, 69 South. 325; that an indictment following the form prescribed by the statute (Code 1907, § 7161, form 59) is sufficient, and the demurrer thereto was properly overruled (Toliver v. State, 142 Ala. 3, 38 South. 801; Jones v. State, 136 Ala. 118, 34 South. 236; Noles v. State, 24 Ala. 672; Headley v. State, 106 Ala. 109, 17 South. 714; Pearce v. State, 115 Ala. 115, 22 South. 502; Bobbitt v. State, 87 Ala. 91, 6 South. 378).

[5] The indictment is not subject to demurrer because several matters are alleged as false pretenses, some of which constitute false pretenses within the statute, and others do not. The averments as to those not within the statute will be treated as surplusage, unless they are descriptive averments. 11 R. C. L. 858, § 41; Barton v. People, 25 Am. St. Rep. 385, note; State v. Vorback, 66 Mo. 168; State v. Janson, 80 Mo. 97.

[6] The statute authorizes proof of the execution of a written instrument by the maker thereof, without producing or accounting for the absence of the subscribing witness (Code 1907, §§ 4004–4006; Hayes v. Banks, Adm'r, etc., 132 Ala. 354, 31 South. 464; Sledge et al. v. Singley et al., 139 Ala. 346,

37 South. 98); and although the maker of the mortgage in this case could not read or write, if as a witness she was able to identify her mark, which, when properly attested, was an efficacious signature to the mortgage, her testimony was competent to prove the execution of the mortgage. Lyons v. Holmes, 11 S. C. 429, 32 Am. Rep. 483.

[7, 8] The mortgage appears on its face to have been regularly acknowledged and recorded, and under the provisions of section 3357 of the Code the attestation of a subscribing witness who could write was not requisite to an efficacious and valid execution of the paper. Loyd v. Oates, 143 Ala. 231, 38 South. 1022, 111 Am. St. Rep. 39; Weil Bros. v. Pope, 53 Ala. 585. The mortgage was not subject to collateral attack on the ground that the notary who took the acknowledgment was personally interested in the mortgage. Monroe v. Arthur, 126 Ala. 362, 28 South. 476, 85 Am. St. Rep. 36; Vizard v. Robinson, 181 Ala. 353, 61 South. 959. The objection to the mortgage and the motion to exclude were properly overruled.

[9] It seems to be well settled, where an indictment for obtaining money under false pretenses alleges several separate pretenses, proof of any one of the pretenses alleged is sufficient to support a conviction. 11 R. C. L. 863, § 46; Bishop's New Criminal Procedure, § 171; Gardner v. State, 4 Ala. App. 131, 58 South. 1001; Beasley v. State, 59 Ala. 20; Commonwealth v. Morrill, et al., 8 Cush. (Mass.) 571; State v. Vorback, 66 Mo. 168; People v. Blanchard, 90 N. Y. 314; State v. Dunlap, 24 Me. 77; People v. Wakely, 62 Mich. 297, 28 N. W. 871. The motion to exclude the evidence on the ground of variance between the averments and proof was therefore, properly overruled.

The court, after reading to the jury section 6921 of the Code as a part of the oral charge, further charged the jury:

"The indictment charges an offense under that section and it is necessary to prove beyond a reasonable doubt, in the first place, that there was a false pretense made by the accused to the party alleged to have been injured—a false pretense: that is, a *statement of facts*, either an existing fact or past fact, which is false or untrue. That is the first essential element of the offense which we have to consider. Was there a false statement made by the accused as charged in the second count of the indictment? In other words, if the accused, as stated in the second count, falsely pretends to Rachel Woodruff, 'with the intent to injure or defraud, that he, the said Jacob L. Addington, was a lawyer'? Now that is one of the charges of false pretense. Is that a fact or not? Did he falsely pretend that he was a lawyer or not, as charged, to Rachel Woodruff? In the first place, you have to determine, did he make that statement, * * * that he was a lawyer? If so, was it false or true? Now, you have heard the evidence on that subject, both that on behalf of the state and on behalf of the defendant, and it is for you to say, as judges of the evidence, what the truth is, where you find the evidence in conflict. If you can reconcile such conflict so as to make the witnesses speak the truth, it will be your duty to do so, in fairness to the witnesses; but if you find any two witnesses are

in irreconcilable conflict, then, of course, it is for you and you alone to decide what the truth is, rejecting what you believe to be untrue, and accepting what you believe to be true. The second element of this offense charged in the second count of the indictment is that there must have been an intent on the part of the defendant to injure or defraud, either to injure the party to whom the false statement was alleged to have been made, or defraud her. Now you, gentlemen, have heard the evidence in this case, and from that evidence as introduced you must determine whether or not there was an intent, on the part of the accused of the alleged false statement, to injure or defraud. Now how does a jury arrive at a conclusion as to what a man's intent was? The only way here you can decide what a man's intent was, intent being what was in the heart of a man, is from all the circumstances, all the surrounding circumstances, from the evidence in the case, and then weigh those circumstances, if sufficient, and draw your reasonable conclusion whether or not there was intent to defraud; whether or not it is true, applying to it your own judgment, your own experience, and your own common sense. Now it is not necessary that all the alleged false pretenses should be proven as charged. In other words, it would be sufficient to sustain the false pretense alleged in this second count of the indictment if you believed, beyond a reasonable doubt, that the defendant, with the intent to injure or defraud, made any one of the alleged false statements set out therein. For example, if it was proven beyond a reasonable doubt that he with the intent to injure or defraud—that the defendant said he was a lawyer, that would be sufficient, without proving furthermore that he made the representation that 'he could plead the case of James M. Addison, charged with vagrancy in court.' You would not have to prove all that was alleged, but any one statement set forth, provided it was a material statement, and provided that the party to whom same was made relied upon it, and was induced to sign the alleged instrument by relying on such statement. *If the state proves, beyond a reasonable doubt, that any one of these separate alleged false statements, either that he said he was a lawyer, or that he could plead the case of James M. Addison, charged with vagrancy, in court, or that he, Jacob L. Addington, was an attorney at the Birmingham bar and was authorized to defend cases in Birmingham, Ala.; in other words, if the evidence proved any one of those three alleged false statements, it would be sufficient to make out a charge of false pretense, provided you believed beyond a reasonable doubt that the defendant had at the time an intent to injure or defraud, and furthermore that Mrs. Rachel Woodruff signed the instrument described on account of that false statement, and was—and that that was the controlling inducement or controlling cause that moved her to sign it, and provided, furthermore, that that occurred in this county, and within three years next preceding the finding of the indictment.*

At the conclusion of the oral charge, the defendant reserved an exception to the portion of the oral charge above italicized, and the court then said to the jury:

"Yes; I will say in that regard—I think I covered that in the charge, but I will say that the statement that the court made to that effect, to the effect that it is only necessary to establish one of the representations; that is, coupled with the statement that each of those statements must have been a material statement, 'and one upon which the party relied, and which induced the party to act."

The defendant also reserved an exception to this last statement of the court. It is the opinion of the writer that the portion of the oral charge to which exception was first reserved is erroneous, in that it is clearly a charge on the *effect* of the evidence, in violation of section 5362 of the Code 1907; and constitutes reversible error. L. & N. R. R. Co. v. Godwin, 191 Ala. 498, 67 South. 675. This portion of the charge is subject to the further vice that it assumes that the alleged statement, *"that he could plead the case of James M. Addison, charged with vagrancy, in court," was made as of fact,* while under some phases of the evidence, if such or similar statement was made, it was open to the jury to find that it was a mere jest, or that it was a promise to do something in the future. If this position is correct, it is manifest that what the court said in response to this exception in no way cured these vices. The sum and substance of the correction was that the statement must be a "material statement." This might all be true, and yet the statement not be one *of fact.* Neither is this error rendered innocuous by what had been previously said, in stating the elements of the offense to the effect that the pretense, to be within the statute, must be *"a statement of fact."* After charging this as the law, the court follows it with the specific instruction that, if the jury believed beyond a reasonable doubt that the defendant said "that he could plead the case of James M. Addison in court," the case was made out, provided this was a material statement, and was made in the county within three years before the finding of the indictment. The only inquiry submitted to the jury with respect to this phase of the case presented in the indictment was: Did the defendant make the statement "that he could plead the case of James M. Addison, charged with vagrancy, in court"? Was this a material statement? Did he have an intent to injure or defraud? Did Mrs. Woodruff sign the mortgage on account of that statement? Was that the controlling inducement that moved her to sign it? Did this occur in the county within three years before the finding of the indictment?—clearly assuming that, if such statement was made, it was made *as of fact.*

"Whether a material representation was falsely made, *as of a fact;* whether it was made with intent to defraud; whether in consequence of such representation, and relying on it, the owner was induced to part with the alleged thing of value—are all inquiries for the jury, under proper instructions, on the solution of which the conviction or acquittal of the accused depends." Beasley v. State, supra.

"The instructions given by the court affirmatively, ex mero motu, should present the particular case, in all the phases and aspects in which the jury ought to consider it, not giving any undue prominence to, or leaving in obscurity, any phase or aspect there is evidence tending to support; and if such instructions in effect discard or ignore, and thereby induce the jury to discard or ignore, any real, material element of the offense imputed to the accused, they ought not to be supported." Woodbury v. State, 69 Ala. 242, 44 Am. Rep. 515.

"It would be difficult, if not impracticable, to lay down any general rule which could govern

every case which is within the statute. Many questions of fact must be settled by a jury, such as *the character of the pretense used*, the credit given to it, the occasion, and the evil purpose sought to be accomplished by the false device, which matters necessarily involve the motives actuating the minds of both parties." State v. Vanderbilt, 27 N. J. Law (3 Dutch.) 336.

In People v. Blanchard, 90 N. Y. 320, it was said:

"The representations relied on were proved almost literally as they stand in the indictment, and in such case it appears to be the rule that the sense in which they were used, the meaning they were intended to bear, and what was designed to be and what was understood from them, is a question for the jury"—citing Regina v. Archer, 6 Cox's Cr. Cas. 518.

A mere idle assertion, or the expression of a purpose or the ability to do something in the future, or a promise to perform services at a future time, not intended or accepted as a statement of a material fact, is not within the statute. Colly v. State, 55 Ala. 85; Woodbury v. State, supra; People v. Jordan, 66 Cal. 10, 4 Pac. 773, 56 Am. Rep. 73; 11 R. C. L. 832, § 10. The substance of the testimony given by Mrs. Woodruff as to the alleged statement made by the defendant, when considered as a whole, was, to use her language:

"He said he had a son 11 years old, and he [his son] could plead law about as good as he [the defendant] could. He told me and Mrs. Knight that, a lady friend of mine, one of my neighbors." Record, p. 17.

When the alleged pretense above italicized is separated from the others alleged in the indictment, and in view of the uncertainty of the meaning intended to be conveyed by the statement shown by the testimony of the witness, it cannot be said that the evidence showed without room for adverse inference that the statement was made as of fact; and the charge, in assuming that it was invaded the province of the jury.

There was some evidence tending to show that the mortgage in question was given by the witness Woodruff to secure an indebtedness to McNeal for services to be rendered by McNeal in behalf of Addison in a divorce proceeding and securing the custody of his (Addison's) children. If this was true, and the mortgage was given for the purpose of securing a bona fide indebtedness due from Woodruff to McNeal, the elements of injury essential to the fraud would be absent. Commonwealth v. Harkins, 128 Mass. 79; Bishop's New Crim. Law, § 438. The charge set out in the ninth assignment of error, drawn no doubt with this principle in view, as worded, if given, would have been an invasion of the province of the jury, and was well refused. The other charges refused to defendant were properly refused, for reasons patent on their face.

Considering the testimony in this record in its entirety, the writer is driven to the conclusion that the testimony of the witness Mrs. Woodruff, to the effect that the defendant said he was a lawyer, is but the state-

16 Ala.App.—2

ment of her conclusion, drawn from the transaction leading up to the signing of the mortgage, and that, in fact, all that he really said in respect to such professional character was, to use her language:

"He said he had a son 11 years old, and he could plead law about as good as he could. He told me and Mrs. Knight that, a lady friend of mine, one of my neighbors."

While the conduct of the defendant may have been such as to warrant Mrs. Woodruff in drawing this conclusion, this statement, standing alone, certainly does not warrant the finding of a verdict by a jury in this solemn judicial proceeding that the defendant represented to Mrs. Woodruff, with intent to defraud, the fact that he was a lawyer, nor does it warrant the finding that any one of the other alleged false pretenses were made by the defendant, and therefore that a new trial should be awarded.

However, Judges Pelham and Evans do not concur in the views above expressed as to the court's oral charge being erroneous; nor what is said as to the defendant being entitled to a new trial, holding that the oral charge, when considered as a whole, is a clear statement of the law and free from error, that the evidence is sufficient to sustain the verdict, and the motion for a new trial was properly overruled.

The result is that the judgment of the criminal court is affirmed.

Affirmed.

PELHAM, P. J. (in which EVANS, J., concurs). [10] The evidence set out in the bill of exceptions is ample to show the commission of the offense charged against the defendant and of his guilty participation. I deem it necessary to call attention to the state of the record in this case on the two questions on which Judge BROWN, in writing a minority opinion, reaches his conclusion that reversible error is shown. The record shows that the state's witness, Mrs. Woodruff, in plain, unequivocal language testified that the defendant represented himself to be a lawyer; and even conceding that it was "her conclusion drawn from the transaction leading up to the signing of the mortgage" (dissenting opinion of BROWN, J.), it is shown to have been based on her personal knowledge, derived from the very transaction between the defendant and herself in which it is alleged that he did so falsely pretend to her. His pretense need not necessarily have been the statement to her of the bald, naked fact in so many words. If his conduct and course of dealing with her, and the circumstances, were such as support this conclusion and leave no room for adverse inference, this would be sufficient. Moreover, it is shown by the bill of exceptions (transcript, p. 15) that, after the witness Mrs. Woodruff had testified that the defendant had represented himself to her as being a lawyer, the court propounded to her this ques-

tion: "You said a little while ago he [defendant] stated to you he was a lawyer. Did he say anything along that line?"—to which the witness answered, "Yes;" whereupon the court asked the following question, "What was it?" to which the witness made reply, "Well, he just said he was a lawyer, and he would help me out." No objection was made to the admission of this testimony on the ground that it was a conclusion, or on any other ground—it is part of the evidence introduced in the case without objection. On at least two other occasions during the course of this witness'. testimony she stated (without any objection being interposed or motion made to exclude the evidence) that the defendant told her he was a lawyer and would look after her case for her. Under this positive state of the evidence, it is not for this court to pass upon the truthfulness of this statement of the witness and say whether the defendant "*really*" did or did not make this representation. It was testified to without objection by a witness on the trial of the case, under the sanctity of an oath, and no attempt was made to impeach her, and it does not lie within the province of this court of review to reject it, and impeach the credibility of the witness, by holding that the defendant did not "*really*" state to the witness what she positively testified he did state to her.

[11] The credibility of a witness' statement is a question for the jury trying the case at nisi prius (Davis v. State, 152 Ala. 25, 44 South. 561), and the jury and trial court, who had the witness before them in person, with those advantages of observing conduct, demeanor, etc., not possessed by us, evidently accepted the statement as true, for the jury, principally on the testimony of this witness, returned a verdict of guilty against the defendant, which the court refused to disturb on a motion for new trial. The other constituent elements of the offense charged were all proven, and the question of the defendant's guilt became a question for the jury in determining the weight to be given the evidence, of which the jury are the sole judges. Smith v. State, 165 Ala. 50, 51 South. 610. The verdict of the jury can neither be said to be without support in the finding of guilt, nor plainly and palpably against the weight of the evidence. The evidence introduced on the trial in behalf of the state was amply sufficient, if believed by the jury, not only to support, but to justify as a reasonable and fair finding, the verdict of guilt returned by the jury.

The other point upon which it is sought to show error committed by the trial court justifying a reversal in the minority opinion of Judge BROWN relates to an exception to a portion of the oral charge. It is stated in that opinion:

"At the conclusion of the oral charge, the defendant reserved an exception to the portion of the oral charge above italicized."

It is not borne out by the record that the defendant reserved an exception to that particular portion of the oral charge italicized in the minority opinion; and in order that the discussion herein of the oral charge and exceptions reserved thereto may be understood, the reporter will set out in full the oral charge of the court and exceptions noted as the same appears in the transcript (pages 47 to 55, inclusive).

[12] In the first place, it will be observed that the exception at the conclusion of the oral charge is general, and had reference to, and fairly included in the portion excepted to, the entire last paragraph of the charge, commencing, "For example," and not merely that portion only singled out and italicized in the minority opinion. It cannot be doubted that portions of the charge contained in this paragraph correctly state propositions of the law applicable to the case. In fact, for that matter, I may remark here that the charge as a whole pretty thoroughly and exhaustively correctly states the principles of law bearing on the case as presented to the jury. It is well settled by a long and uninterrupted line of decisions by the Supreme Court and this court that unless every proposition stated in that portion of the charge excepted to is unsound and erroneous, it will avail the defendant nothing as showing reversible error; and that a general exception is unavailing unless every proposition stated in the portion of the charge excepted to is erroneous. Bonner v. State, 107 Ala. 97, 106, 18 South. 226.

[13] By reference to the report of the case, wherein the charge and exceptions to it are set out by the reporter, it will be seen that the particular portion of the charge to which an exception is in fact noted is specifically stated in the objection made by the defendant as beginning with the words: "It is not necessary." If we examine the charge as set out, and take the exception to refer to that part of the charge commencing with the sentence, "Now it is not necessary," etc., and ending with the words, "within three years next preceding the finding of the indictment," it will be found that many of the different principles of law included in this portion of the charge are correctly and well stated. In fact, the excerpt does not present the statement of an erroneous proposition of law, when construed in connection with the charge in its entirety. It is this entire portion of the oral charge that is set out in brief of defendant's counsel as being the portion of the general charge to which exception is reserved, and not that part selected by Judge BROWN from the middle of one of the paragraphs setting out the charge and italicized for criticism. This entire section of the charge commencing, "Now it is not necessary," and ending with the words "within three years next preceding the finding of the indictment," is also part of the charge that

is set out in the bill of exceptions in hæc verba in this record as the part of the charge to which an exception was reserved by the defendant, and not that part italicized in the minority opinion, commencing in the middle of a paragraph and ending in the middle of a sentence, and to which no exception was taken as limited to that particular portion of the charge. But if we take the exception as only going to that portion of the charge announcing the principle to which specific objection was made, "to the effect that it is not essential to establish each representation [false representations averred] by the evidence" (see report of case), the court's charge on that point, that it is not necessary that all the alleged false pretenses should be proved as charged, but if it is proved beyond a reasonable doubt that the defendant made any one of the alleged false statements set out in the charge, it is sufficient, this is a correct statement of a principle of law (Gardner v. State, 4 Ala. App. 131, 58 South. 1001, and authorities there cited) ; and a reading of the charge and exceptions to it will clearly demonstrate that it was to the pronouncement of this principle of law that the defendant objected and undertook to reserve an exception. Under the ruling in B. R., L. & P. Co. v. Friedman, 187 Ala. 562, 570, 65 South. 939, such an exception is abortive and unavailing.

The criticisms of the general charge indulged in are not made the subject of attack by the defendant, nor, as we have seen, was there any objection made or exception reserved, limited to that particular part of the charge italicized and criticized in the opinion of Judge BROWN. No other construction can be placed on the objections made and exceptions reserved by the defendant to the charge than that general objections were made to designated portions of the oral charge of the court which do not admit of any question as embracing within the part objected to correct propositions of law on the subjects to which they relate, and, possibly, a specific objection to that part of the charge wherein the court correctly propounded the law to the effect that proof of any one of the pretenses alleged was sufficient. No objection was made, or even remotely hinted at, that the charge transgressed the rule in charging on the effect of the evidence, or failed to charge that the false representation must be a material statement of a matter of fact, or violated the rule of law as to the assumption of facts; yet it is on these grounds alone that the charge is attacked in Judge BROWN'S minority opinion and held erroneous, even to requiring a reversal of the case. The charge is not subject to any of the supposed vices made the basis of attack, nor are the questions for the first time detected and raised against it as a ground for attack in Judge BROWN'S opinion presented on the record. However, it may be well, under these conditions, to answer and show the fallacy of the objections discovered against the soundness of the general charge and given as reasons in the minority opinion why the case should be reversed.

[14] The charge, read as a whole, or in any of its related parts, cannot with any degree of fairness be said to be an invasion of the province of the jury, as being on the effect of any part of the evidence. This is true, even applying to it the test of severe grammatical criticism, which is not the proper rule of construction to apply to the general charge of the court. B. R., L. & P. Co. v. Murphy, 2 Ala. App. 588, 601, 56 South. 817. Even though part of the portion of the charge excepted to was faulty in this particular, in violating section 5362 of the Code, the other parts of that portion objected to were clearly not subject to such an objection, and the objection, therefore, would not be well taken. Maxwell v. State, 3 Ala. App. 169, 171, 57 South. 505.

[15] It only requires a fair reading of the charge to refute the strained construction of language that must be indulged in to even imagine that the charge read as a whole, in connection with the part referred to in this particular, trespasses upon the rule forbidding an assumption of facts. Hypercriticism should not be indulged in in construing charges of the court (S. & N. R. R. Co. v. Jones, 56 Ala. 507; McGuire v. State, 2 Ala. App. 218, 223, 57 South. 57) ; nor fanciful theories based on the vagaries of the imagination advanced in the construction of the court's charge, which is usually—as it is here, and as it should be—expressed in plain language that is susceptible of the ordinary understanding.

[16] It is quite clear that the charge is not erroneous in the particular pointed out by the defendant in the objection made to it —i. e., the pronouncement of the rule of law that it was not necessary that all of the false pretenses alleged must be proven; and as the defendant saw fit to particularize the ground of this exception, the court is not authorized, as in the minority opinion, to go beyond this stated ground of exception and inject objections of its own, and then proceed to pass upon them, that did not enter into the trial or consideration of the case. A. G. Rhodes & Son Co. v. Charleston, 41 South. 746.[1] "The reason underlying the principle—the theory upon which specific exceptions are required—is that, if error has in fact been committed, the exception reserved will point out the error to the presiding judge so that he may at once correct it." Opinion of the court by Justice (afterwards Chief Justice) McClellan in Bonner v. State, 107 Ala. 97, 106, 18 South. 226. Those particular so-called errors of the oral charge discussed in the minority opinion were not

[1] Reported in full in the Southern Reporter; reported as a memorandum decision without opinion in 148 Ala. 671.

pointed out or called to the attention of the trial court in any manner whatsoever; nor were they, or any of them, made the basis of objection interposed to the charge of the court; nor are they discussed, or even so much as referred to, by counsel for defendant in a carefully prepared brief of 32 closely typewritten pages filed in behalf of the appellant.

[17] The court, in its oral charge, more than once stated that, to constitute the offense charged, the misrepresentation must have been of a material fact, upon which the party relied, or had a right to rely, and read to the jury a full statement of the law on that proposition as announced by the Supreme Court in Woodbury v. State, 69 Ala. 242, 44 Am. Rep. 515. The court cannot embody in every sentence or paragraph of its charge the entire law of the case in all of its related parts and different phases, and criticism such as made of the court's oral charge in the minority opinion (even if grounded on objections and exceptions shown by the record) would be greatly strained and wholly unauthorized by any fair or legally recognized rule of construction. Such hypercriticism of a part of the oral charge, standing alone, is not the proper method by which to test it and measure the legal correctness or accuracy of the charge. Sheffield v. Harris, 183 Ala. 357, 369, 61 South. 88. It has been long and well settled by an uninterrupted line of authorities that the oral charge of the court must be construed as a whole, and that a judgment will not be reversed because a separate part of the charge, standing alone and unexplained, is erroneous, if the charge, construed as a whole, contains a correct statement of the law of the case. Decatur Co. v. Mehaffey, 128 Ala. 242, 29 South. 646; L. & N. R. R. Co. v. Bogue, 177 Ala. 349, 58 South. 392. If a phrase, or any part of a charge, contains an elliptical form of expression, or is ambiguous or likely to mislead, it is both the privilege and duty of counsel to call the court's attention to it, so that it might be corrected. The rule is well stated in the language of Justice McClellan in the opinion of the court in McNeill v. State, 102 Ala. 121, 126, 15 South. 352, 354 (48 Am. St. Rep. 17) quoting from another opinion of the Supreme Court previously written by him (M. & E. R. R. Co. v. Stewart, 91 Ala. 421, 427, 8 South. 708, 712):

"The general charge of a trial court, given ex mero motu with reference to any point, is to be considered as an entirety, and in connection with the evidence; and it 'should be read and construed with regard to the connection between its several sentences and propositions; each declaration being shaded and interpreted in the light of the context; and if any part, so considered, limited, or expanded, asserts the law correctly, it will not furnish ground for reversal, however faulty the clause might be, if its meaning were not controlled by prior or subsequent passages.' Montgomery & Eufaula R. R. Co. v. Stewart, 91 Ala. 421, 427 [8 South. 708]; Williams v. State, 83 Ala. 68 [3 South. 743];

O'Donnell v. Rodiger, 76 Ala. 222 [52 Am. Rep. 322]; L. & N. R. R. Co. v. Orr, 94 Ala. 602 [10 South. 167]."

In a much later case, Justice Mayfield appositely says in the opinion of the court on the same subject in Roberson v. State, 183 Ala. 43, 59, 62 South. 837, 843:

"Some parts of the oral charge as to which exceptions were reserved, if considered as standing alone, unaided by that which preceded and that which followed, would be error, to reverse, under the rule as we have above declared it; but, taken in connection with that which preceded, and that which followed, and in connection with the written charges, as we must take them, it affirmatively appears that no injury could have resulted. The errors, if such they should be called, consisted of incomplete statements as to the burden and the sufficiency of proof, as to the question of self-defense. Such statements were not positively erroneous, but were incomplete, in that certain qualifications of the rule were not stated; but the proper qualifications were stated in other parts of the oral charge and in requested written charges, and this fact prevented reversible error."

When read in connection with the evidence in the case, as is the correct rule (M. L. & R. Co. v. Hughes, 190 Ala. 216, 223, 67 South. 278), the oral charge has not the slightest tendency to erroneously state the principles of law applicable to the evidence before the court, or even be misleading in its tendency in any particular made the ground of objection. Viewed from any and every possible angle, there is no room for a holding that the record presents any question showing error in the court's general charge.

I find no reversible error presented in the record, and an affirmance of the judgment of conviction, in my opinion, should be ordered. Judge EVANS concurs in this conclusion, and in the views herein expressed, and an affirmance of the judgment appealed from is ordered.

Affirmed.

BROWN, J., dissenting in part.

On Application for Rehearing.

PER CURIAM. This case has received careful consideration on the application for rehearing by Judge PELHAM and Judge EVANS, who concurred in the majority opinion of the court written by PELHAM, P. J., on the original submission, and they think the questions dealt with are correctly treated and disposed of in that opinion. We adhere to that opinion, and can see no good reason or beneficial purpose to be served by promulgating a lengthy opinion on this application, containing a rediscussion of the questions we deem properly disposed of on sound reasoning and good authority in the original opinion. The cases cited in the majority opinion of the court will be found, upon investigation, in every instance to support the holdings they are cited in connection with. There is nothing in any of the numerous array of cases cited in Judge BROWN'S additional opinion of some length, which he seems to think necessary to promulgate on this appli-

cation, to elucidate his minority views, that is in the way of what is said, or the conclusions reached, by the majority of the court in the original opinion.

We have again, with painstaking care, reviewed the facts in the case, and are of the opinion, as heretofore expressed, that there is ample evidence to sustain the jury's verdict, and that the trial court cannot be said to have committed reversible error in overruling the defendant's motion for a new trial, under the familiar rule of law applicable to review here of the trial court's rulings in denying motions for new trials, based on the ground that the verdict is contrary to or not supported by the evidence. The witness Mrs. Woodruff seems to have been a rather illiterate, elderly woman, unable to give a very intelligent version of the transaction; but her testimony, taken as a whole, does not seem to us to be open to any other fair and reasonable construction than that the defendant made false representations to her about his being a lawyer, that induced her to execute a mortgage *to the defendant* for the purpose of securing an attorney's fee *to him* to obtain *his* services as a lawyer to represent her son. If she was not misled and deceived by the defendant assuring her that this was the purpose for which the mortgage was given, why was it executed at his instance to him? It was not disputed that the mortgage was executed by this old lady to secure an attorney's fee for the services of a lawyer to assist her son out of his troubles. *The evidence shows without contradiction that the defendant procured the mortgage from her and that it was executed to him.* Mrs. Woodruff testified positively that the defendant stated to her that he was a lawyer and would represent her son as such. Her testimony as a whole and the attending circumstances bear out the reasonableness and truth of this statement. One or two isolated or detached sentences in her testimony may be seized upon and stressed to detract from the effect of her testimony and the corroborating circumstances; but clearly this was a question of fact, properly submitted to the jury, and was resolved by the jury against the defendant. The trial court, possessing the advantage of having the witnesses before it, entertained the opinion that the jury was justified, under the evidence adduced upon the trial, in its conclusion, and a careful consideration of the evidence set out in the record leads us to the same conclusion, and we would feel unwarranted in overturning the verdict of the jury and holding the trial court in error in its ruling and reverse the judgment.

The application for a rehearing is denied.

BROWN, J. (dissenting). The criticism by the majority opinion that the vice in the oral charge of the court pointed out by the opinion of the writer heretofore promulgated was not noticed in appellant's brief and was raised by the writer for the first time is unwarranted. The statute makes it the duty of this court to search the record for errors apparent thereon; and there is no rule of court or statute requiring the appellant in a criminal case to point out the errors, either by assignment of error or brief. Code 1907, § 6264; Campbell v. State, 182 Ala. 22, 62 South. 57; Gaines v. State, 146 Ala. 16, 41 South. 865. And as observed by the Supreme Court in Campbell's Case, supra:

"While the right to appeal is purely a creature of our statutes, the Legislature, by adopting the above provisions of our Code, clearly indicates the legislative purpose that such right shall not, in any criminal case, become a mockery, but that the right shall be substantial, and that this court shall see to it that a defendant who has been convicted in a criminal case, and who has reserved a question of law for the consideration of this court, and who prays an appeal, shall be accorded the privilege of having the legal questions presented by his record properly passed upon."

The authorities cited in the majority opinion to the proposition that appellant's exception was abortive and was not sufficient to raise the question commented on in the opinion of the writer do not sustain the pronouncement there made, as the following excerpts from those cases will show. Quoting from the opinion in Bonner v. State, 107 Ala. 106, 18 South. 228:

"The general charge of the court was given in writing. It covers the case pretty thoroughly and exhaustively, stating, of course, many distinct principles of law bearing on the case as presented to the jury, and expounding them concisely and correctly. The defendant excepted generally to the giving of this charge; the recital being, 'The defendant excepted to the giving of the above charge,' and this is all."

In this case the bill of exceptions recites:

"That part of the oral charge excepted to being as follows: 'Now it is not necessary that all the alleged false pretenses should be proven as charged. In other words, it would be sufficient to sustain * * * this second count of the indictment if you believed, beyond a reasonable doubt, that the defendant, with intent to injure or defraud, made any one of the alleged false statements set out therein. For example, if it was proven beyond a reasonable doubt that he, with the intent to injure or defraud—that the defendant said he was a lawyer, that would be sufficient, without proving furthermore that he made the representation that he could plead the case of James M. Addison, charged with vagrancy, in court. You would not have to prove all that was alleged, but any one statement set forth, provided it was a material statement, and provided the party to whom it was made relied upon it, and was induced to sign the alleged instrument relying upon such statement. If the statement proves, beyond a reasonable doubt, that any one of these separate alleged false statements, either that he said he was a lawyer, or that he could plead the case of James M. Addison, charged with vagrancy, in court, or that he, Jacob L. Addington, was an attorney at the Birmingham bar, and was authorized to defend cases in Birmingham, Ala.; in other words, if the evidence proved any one of those three alleged false statements, it would be sufficient to make out a charge of false pretenses, provided you believed beyond a reasonable doubt that the defendant had at the time an intent to injure or defraud, and furthermore that Mrs. Rachel Woodruff signed the instrument described on account of that false statement, and was—and

that that was the controlling inducement or controlling motive that caused her to sign it, and provided, furthermore, that that occurred in this county, and within three years preceding the finding of the indictment.' "

In B. R., L. & P. Co. v. Friedman, 187 Ala. 570, 65 South. 941, it was said:

"The exception attempted to be taken to the oral charge of the court in respect of the statement that the jury's province was to decide the issues of fact was abortive, for that it was descriptive only—*not the reservation of an exception to a particular, exactly designated statement of the judge.* There is no practice allowing an exception by description of a subject treated by the court in an oral charge to the jury."

The exception in this case is to "an exactly designated statement of the judge," dealing solely and exclusively with the quantum of proof necessary to sustain the averments of the indictment descriptive of the offense, and the conclusion of the majority that the exception is general and does not reserve on the record the question discussed in the minority opinion is supertechnical, not borne out by the record, nor sustained by authority.

Under the practice prevailing in this state, it is not incumbent on the exceptor to state the grounds or give the reasons prompting the exception, or to enter into any controversy with the court as to the correctness of the principles announced in the charge. All that is required is that a specific portion of the charge be pointed out, in order that the trial court may change or modify this portion if it is deemed objectionable *in any respect.* And if the exception is so reserved, and the portion of the charge is a charge on the effect of the evidence, invasive of the province of the jury, or assumes any fact essential to the defendant's guilt, or is otherwise objectionable, it is the duty of this court, on appeal, to review the question thus presented. Moore & Co. v. Robinson, 62 Ala. 538; Mayer v. Thompson-Hutchison Bldg. Co., 116 Ala. 638, 22 South. 859; Gaynor v. L. & N. R. R. Co., 136 Ala. 259, 33 South. 808; McIntosh v. State, 140 Ala. 137, 37 South. 223; Winter v. State, 133 Ala. 176, 32 South. 125; Collins v. State, 138 Ala. 57, 34 South. 993; Ragsdale v. State, 134 Ala. 24, 32 South. 674; L. & N. R. R. Co. v. Godwin, 191 Ala. 498, 67 South. 675. The portion of the oral charge pointed out by the exception as set out in the record here, as we have said, deals solely with the quantum of proof necessary to sustain the averments of the indictment descriptive of the offense. It will be noticed that these averments were not in the alternative, and in addition to the criticism noted in the opinion of the writer heretofore promulgated, this portion of the charge is clearly subject to the vice that it assumes that three separate and distinct false pretensions are alleged, one at least of which is not within the statute, to wit, "that he could plead the case of James M. Addison, charged with vagrancy, in court," unless, as a matter of fact, it

amounted to an affirmation by the defendant that he possessed the present ability and qualifications as an attorney at law to appear and plead Addison's case. This question, under all the authorities, was one for the jury, because, conceding that such assertion was made, it was open to a construction wholly consistent with the defendant's innocence—i. e., that it was an idle jest, or a promise—or it might have carried the meaning that defendant would shortly qualify himself and in time to act in the capacity as attorney for Addison, and would then plead his case.

"As against defendants, these statutes, like all other criminal ones, must be construed strictly, and nothing not within their words be held to be within their meaning. On the other hand, in favor of defendants, the construction is liberal. So that the word 'pretense,' instead of being understood in the popular sense, has obtained a legal and technical one." 2 Bishop's New Criminal Law, § 415.

"It is not a false pretense to state, whether in the form of a promise or *in any other form,* what one deems the future will bring forth; a pretense must relate either to the past or the present." 2 Bishop's Criminal Law, § 420.

And it is held that the assertion or statement of a physician that he will or can cure a person of a certain disease, although false, is not within the statute. Rex v. Bradford, 1 Ld. Raym. 366; 2 Bishop's New Criminal Law, § 419.

While much might be said in opposition to the doctrine heretofore announced in this case, on the authority of Gardner v. State, 4 Ala. App. 131, 58 South. 1001, holding, where the indictment avers several separate and distinct pretenses, proof of any one of the several pretenses will support a conviction, and especially its application to an indictment where the several pretenses are not stated in the alternative and the averments are descriptive of the offense (Felix v. State, 18 Ala. 720; Eskridge v. State, 25 Ala. 30; Thomas v. State, 111 Ala. 51, 20 South. 617; Townsend v. State, 137 Ala. 91, 34 South. 382; Lindsey v. State, 48 Ala. 169; McGehee v. State, 58 Ala. 360; Miles v. State, 94 Ala. 106, 11 South. 403; State v. O'Donald, 1 McCord [S. C.] 532, 10 Am. Dec. 691; Cowan v. State, 41 Tex. Cr. R. 617, 56 S. W. 751), however that may be, the statement of the doctrine as made in this case and in Gardner's Case is subject to the qualification that the pretense alleged and proved must be within the purview of the statute. Bishop states the rule thus:

"There need be only one *false* pretense. Though several are set out in an indictment, yet if any one is proved—being such as truly amounts in law to a false pretense—the indictment is sustained." 2 Bishop's Criminal Law, § 418; 2 Bishop's New Proc. § 171.

The statement of the rule by the Supreme Court in no way conflicts with the uniform holding that all matters descriptive of the offense must be proven, but is that proof of "the *falsity* of every pretense made is not al-

ways necessary to a conviction," and gives as the reason:

"If it were, every malefactor could escape conviction by blending some truth with his false pretense." Beasley v. State, 59 Ala. 20; Woods v. State, 133 Ala. 166, 31 South. 984.

It was the province of the jury to pass upon the evidence, and draw the inference, if in their judgment the evidence warranted it, that the statement imputed to the defendant "that he could plead the case of James Addison, charged with vagrancy, in court," was the affirmation of the defendant's then present ability and qualification to appear in court as Addison's attorney and plead his case. Beasley v. State, 59 Ala. 20; Woodbury v. State, 69 Ala. 242, 44 Am. Rep. 515; Smith v. State, 165 Ala. 50, 51 South. 610; Colly v. State, 55 Ala. 85; State v. Vanderbilt, 27 N. J. Law, 336; People v. Blanchard, 90 N. Y. 320. The court, in its oral charge, denied this right to the jury, and in so doing invaded their province, and impinged a constitutional right of the defendant. Const. 1901, § 11; Martin v. State, 62 Ala. 240.

While it is the jury's province to pass upon the credibility and weight of the evidence, and determine in the first instance whether the evidence justifies a verdict of guilty, it is the right and duty of this court, in reviewing the order of the court denying a new trial, to pass upon the weight of the evidence, and, if needs be, the credibility of the evidence as disclosed by the record. This rule is not new, but has existed for more than 20 years in civil appeals, and by the act approved September 22, 1915, amended section 2846 of the Code is made applicable to criminal appeals. Acts 1915, p. 722.

In Cobb v. Malone, 92 Ala. 630, 9 South. 738, where the rule was first announced in this state in civil cases, it was said:

"The decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. And decisions granting new trials will not be reversed, unless the evidence plainly and palpably supports the verdict. Of course, these rules are not inflexible; but subject to exceptions and qualifications, dependent upon peculiar circumstances."

This court exercised the power in Patterson v. Mulligan, 12 Ala. App. 324, 66 South. 914, and, after reviewing and passing on the weight of the evidence, reversed the trial court, and granted the appellant a new trial. The power should be more liberally exercised in criminal appeals, for, as said by the Supreme Court:

"In no case of conviction, in which the evidence is palpably inconsistent [consistent] with the reasonable supposition of the innocence of the accused, can the primary court refuse to grant a new trial." Martin v. State, supra.

In order to constitute the offense denounced by our statute, there must be a false statement relating to some existing or past fact, calculated to deceive, or the use of a false symbol or token calculated to deceive, and which misled and caused the party defrauded to part with a thing of value. Code 1907, §§ 6920, 6921; Wilkerson v. State, 140 Ala. 155, 36 South. 1004; Pearce v. State, 115 Ala. 115, 22 South. 502; Colly v. State, 55 Ala. 85; Woodbury v. State, 69 Ala. 242, 44 Am. Rep. 515; Young v. State, 155 Ala. 145, 46 South. 580; Cowan v. State, 41 Tex. Cr. R. 617, 56 S. W. 751; Commonwealth v. Drew, 19 Pick. (Mass.) 179. Mere "conduct and course of dealing," unaccompanied by the employment of a false representation of fact by word or the employment of a false symbol or token, although sufficient to warrant a conclusion reached by the party parting with the thing of value, is not sufficient to bring the case within the statute. Such construction of the statute would be a strict construction against the accused, which is contrary to the policy of the law (2 Bishop's Criminal Law, § 415), and would subject him to criminal liability on an erroneous conclusion of the other party to the transaction. Cases are numerous where false tokens —material evidences of the existence of a fact—were employed to assist in accomplishing the fraudulent purpose, and a conviction sustained. Such was the leading case of Rex v. Barnard, 7 C. & P. 784, where the accused, by appearing in the garb of an Oxford University student, was enabled to fraudulently obtain goods on credit. However, in that case the report shows that the accused "stated that he belonged to Magdalene College"; and likewise in the following cases the accused employed a symbol or token to aid his unlawful purpose: Regina v. Bull, 13 Cox, Cr. Law Cas. 608; State v. Bourne, 86 Minn. 432, 90 N. W. 1108; Taylor v. Commonwealth, 94 Ky. 281, 22 S. W. 217; State v. Hammelsy, 52 Or. 156, 96 Pac. 865, 17 L. R. A. (N. S.) 244, 132 Am. St. Rep. 686; State v. Foxton, 166 Iowa, 181, 147 N. W. 347, 52 L. R. A. (N. S.) 919, Ann. Cas. 1916E, 727; Commonwealth v. Mulrey, 170 Mass. 103, 49 N. E. 91; Brown v. State, 37 Tex. Cr. R. 104, 38 S. W. 1008, 66 Am. St. Rep. 794; Commonwealth v. Beckett, 119 Ky. 817, 84 S. W. 758, 68 L. R. A. 638, 115 Am. St. Rep. 285. In State v. Goble, 60 Iowa, 447, 15 N. W. 272, the opinion states that:

"The evidence shows that defendant represented by his words and action that he was Backer, and did not apply for payment as the agent or servant of Backer."

The cases noted above cited in 19 Cyc. 402, to sustain the proposition, "A false pretense or representation may be made by act as well as by word;" but an examination of these authorities demonstrates that this is not a clear statement of the rule, and it is only when some symbol or token is used in connection with misleading conduct, such as "passing of a worthless check or draft, or a check which accused has no reason to suppose will be honored" (see 19 Cyc. 402), that a false statement in words is not essential.

In Glackan v. Commonwealth, 3 Metc. (Ky.) 232, under a statute substantially the same as ours, it was held, as our Supreme Court has held, that:

"It is essential to a conviction for obtaining money or property under false pretenses to allege and prove that the pretense whereby the money or property was obtained was the statement of some pretended past occurrence or existing fact, made for the purpose of inducing the party injured to part with his property."

But after an amendment of the statute so as to read, "If any person, by false pretense, *statement*, or token, with intent," etc., it was held that conduct alone might be a pretense. Commonwealth v. Murphy, 96 Ky. 28, 27 S. W. 859.

It is broadly stated in the majority opinion that:

"The evidence set out in the bill of exceptions is ample to show the commission of the offense charged against the defendant and of his guilty participation."

Inasmuch as I do not concur in this conclusion, I deem it proper to state the reasons for not concurring, and this makes it necessary to set out some of the evidence.

The evidence shows without dispute that one Addison, the son of the prosecutrix, was confined in the county jail on a charge of vagrancy, sworn out by Addison's wife; that defendant, having gone to the jail on business, was called by Addison, who requested defendant to aid him in making bail; that the prosecutrix, Mrs. Woodruff, was present at this time. After Addison, by aid of the defendant, secured bail, the defendant, Addison, and the prosecutrix went to the office of one McNeal, an attorney for whom defendant was working, and discussed Addison's trouble with McNeal, agreeing on the amount of the fee to be charged for prosecuting a prospective proceeding for divorce and custody of children to be instituted by Addison against his wife. At this time the question of the prosecutrix giving a mortgage to secure a fee was mentioned, but nothing further was done. Three days thereafter the prosecutrix, accompanied by her friend, John Gravit, came back to McNeal's office, and the prosecutrix then signed the mortgage. The evidence shows that the defendant was not present at this time, and, so far as is shown, he had not been in contact or conversation with the prosecutrix for three days. The testimony of the prosecutrix on its face is self-contradictory, and mainly consists of the statement of conclusions in response to leading questions. The testimony of this witness and others touching the alleged false pretenses is as follows:

Mrs. Woodruff: "Q. Did Mr. Addington say whether or not he was a lawyer? (Defendant objected to leading the witness.) A. Yes, sir; he said he was a lawyer. Q. What else did he say about that? A. Well, he told me that he would get the children and a divorce for my son and property for $150. I mean my son's children and a divorce for my son from his wife. * * * "

Witness further testified, in answer to questions, that she was in Mr. McNeal's office, where Addington stayed, at the time she made her mark to the paper; that McNeal's office and Addington's office were all together. She was then asked the question: "Did Mr. McNeal sign his name to the paper in your presence?" The witness answered:

"Yes, sir; he did, because there wasn't anyone else there to do the writing but him. Q. Well, what was said along about that time, Mrs. Woodruff? A. Well, Mr. Addington there wanted—he said that he would get the children and the property and the divorce for my son for $150, and for me to give a mortgage on my home. Well, I didn't want to do it, understand, and I was of some time of consenting to do it, but last he turned around and said: 'I'll put your son back in jail if you don't, or have him put back.' Q. Did you sign it then? A. Yes, sir; I signed it then. I felt then that I would rather do anything than see my son go back in jail. * * * Q. Did he tell you whether or not he would defend your son? (Defendant objects to the question.)

"The Court: Do you remember all that he said to you at all before you signed that instrument? If you remember, state all that he said to you before you signed that instrument. A. Well, he said that he would get the divorce and children and property, if I would give him a mortgage on my place for $150. Well, then, that was right after my son got out of jail; my son was worried, and he hurried on to his work after he got out of jail, but—

"The Court: What else—did he say anything else to you, besides what you have just stated? A. No, only that he didn't want me—would not take my home away from me.

"The Court: You said a little while ago he stated to you he was a lawyer. Did he say anything along that line? A. Yes.

"The Court: What was it? A. Well, he just said he was a lawyer, and he would help me out.

"The Court: You mean the defendant said— A. Yes; and then he told several around the neighborhood where I live— (Defendant objects to the testimony.)

"The Court: Sustained. *Not* what he told others, but what he told *you* at that time. What else did he say about representing you, or being your lawyer? What did he say, just his own words, as you recollect it? A. Well, he *didn't tell me* that he would have anything to do with my case, for I did not know that I would have any case, but he *told* my *son* that he would plead his case.

"The Court: Did he tell your son apart from you or in your presence? A. He *didn't tell* him in my presence. (Defendant moves to exclude the answer.)

"The Court: Well, that would be hearsay testimony. That statement there as to what was said by defendant to her son, gentlemen, is not to be considered by you as legitimate evidence. It is what was said to her, in order to induce her to make her signature. To Witness: You have related substantially all that he said to you before? A. Yes. He was in the *office of Mr. McNeal* when he told me that he would—that he was a lawyer, and that he would get the divorce and get the children for my son, and after that was when I signed the mortgage. It was after he told me that—I didn't sign the mortgage until he turned around and said that he would put my son back in jail if I didn't sign it, and that was after he told me he was a lawyer, and that he would represent me and get the children and get the divorce. * * * Jimmie is my boy; he was in jail; I wanted to get him out; *I didn't care what I had to do to get him out*, and I will tell you that I would be willing to do anything in this world to get him out, and when I first saw Mr. Addington, Jimmie knew him, and knew who he was.

Jimmie knew all about him—I reckon he did. * * * When I signed the paper, of course, they had already *told me what they were going to charge me to get Jimmie out*, and get the divorce, and get the children. * * * I went down to Jimmie's trial, but *Mr. McNeal* did not go with me, but he was there."

In answer to specific questions preceding each statement, witness answered:

"I made no objections to *him* representing Jimmie, and I wanted *him* to represent Jimmie; he was already out of jail, so that he could get out of his trouble together. I didn't know who my son would get for his lawyer. I was just down there, but I *didn't* know who he was going to get. I did not hire Mr. McNeal, or Mr. Addington, as my lawyer. I hired neither of them. It was up to Jimmie to hire them. I wanted to get Jimmie out, and let him do the hiring; but whatever lawyer he got was all right with me. I left that to him. I didn't know nothing about it. They did get the boy out like they told me he would get out—he got out on bond, and he hasn't been back in jail since. I signed the bond that he got out on, and so did my niece.

"Q. (by the Court). You may let me ask you one question, so that I can get it clear in my mind. When you first testified, you spoke of the defendant, Mr. Addington, saying that he was a lawyer. Did he tell *you* he was a lawyer, or your son? A. Well, he told me. Mr. and Mrs. Knight was in his office, and we were all sitting there talking. Q. Was that before you signed this (referring to the mortgage)? A. Yes. Q. He told you what? A. He said he had a son 11 years old, and he could plead law about as good as he could. He told me and Mrs. Knight that, a lady friend of mine, one of my neighbors. Q. He had a son about 11 years old, that could plead law about as good as he could? A. That is what he said. Then he told several around there. * * * He told me that. Q. That is all you remember he told you about being a lawyer—that he had a son 11 years old that could plead law about as good as he could? A. Yes, sir; I didn't know nothing about him or his son either." (Bottom of page 46 of the transcript.)

Cross-examination: "Mr. John Gravit was in the office of McNeal at the time I signed the mortgage. Mr. McNeal was in his office, and we were in the one that went into his. *Mr. John Gravit came to the office of Mr. McNeal with me. Mr. John Gravit was a friend and neighbor of mine*, and he and Mrs. Knight all came to the office, and *both were with me when I signed the mortgage. Mr. Addington was not there at that time. I don't think he was there.*"

The witness John Gravit testified:

"After Addison was released, three days after this, I went to the office of Mr. McNeal with Mrs. Woodruff, for her to make arrangements with Mr. McNeal to defend her boy. *Mr. Addington was not present.* While there, she made a mortgage to Mr. Addington."

The witness W. C. Martin testified:

"Mr. Addington did not tell her he was a lawyer, and as a matter of fact did not have anything to say to her. He talked with Mr. Addison, who seemed to know him."

The witness J. H. McNeal testified:

"Mr. Addington made no representation to her that he was a lawyer. She said she knew he was not a lawyer, but just worked for a lawyer. I defended her son in the police court, and he was convicted, and an appeal was taken.

* * * There was no representation made to her by Mr. Addington. She stated in my presence that she knew Mr. Addington was not a lawyer, but, as he would take care of my fee, she would make the mortgage out to him, because she could not read or write, and rather deal with the one that she knew than with me. Mr. John Gravit, a neighbor of hers, came into the office with her, and he fully understood why the mortgage was made out and executed by her."

The witness C. C. Martin testified:

"* * * Mr. Addington did not tell him that he was a lawyer, and, as a matter of fact, did not have anything to say to him, as him and Mr. Addison appeared to know each other."

Defendant testified on this subject:

"* * * I think she asked me *why* I did not *make a lawyer*, and I told her that I had a little boy that could beat me in the law."

Witness further testified:

"She knew I was not a lawyer, and she wanted to know why I did not make a lawyer. That is my recollection of the conversation that was had about the little boy. I don't remember whether she asked me whether I was a lawyer or not. I don't remember telling her that I was a lawyer. I don't remember whether she asked me that question. It is my recollection that that conversation came up—that she asked me to do something down at the jail—I would like to explain how that came about."

In answer to the question, "Did you or not tell her you were a lawyer?" witness answered:

"I tried to tell you. If she asked me whether I was a lawyer or not, I told her I was not. Later on, she said something about—what I was trying to tell you about—why I did not make a lawyer. It is probable, and I think, that I did at some time tell her that I was not a lawyer."

This evidence clearly shows that the only representation or statement made by the defendant to the prosecutrix touching his qualifications or ability as a lawyer was "that he had a son 11 years old at home that could plead law as good as he [defendant] could"; and it is utterly preposterous to say that this sustains the averments of the indictment that the defendant represented that he was a lawyer. It shows just the contrary. Furthermore, the course and manner of examination of this witness, and the frequent recurrence by the trial judge to the question as to what defendant had stated to the witness, show that to his mind the testimony of this witness was unsatisfactory. The evidence further shows that the controlling inducement to the signing of the mortgage was not the statement by the defendant, but the duress embodied in the threat to have the son of the prosecutrix put in jail; said threat being made in the absence of the defendant and possibly by McNeal.

For the reasons stated above, the writer is of the opinion that the rehearing should be granted, and the defendant awarded a new trial.